# OCTOBER TERM, 1906.*

## PEOPLE v. TUBBS.

1. JURY—CHALLENGE—ARRAY—SUFFICIENCY.
    It is well settled that a challenge to an array must be in writing.

2. SAME—WAIVER.
    Where, during the argument of a challenge to the array, it appeared that the challenge was not in writing and the judge requested that he might see it when filed, and the challenge, though afterwards filed, was not called to his attention or passed upon by him, it was waived.

3. WITNESSES—EXAMINATION—REDIRECT — CHANGING TESTIMONY.
    Where a witness for the prosecution, on cross-examination, materially changes his testimony from that given on the preliminary examination of respondent, the prosecuting attorney is properly permitted to examine him on redirect with reference to his prior testimony.

4. HOMICIDE—EVIDENCE—ADMISSIBILITY—ACTS OF ACCUSED.
    On a trial for murder, evidence is admissible showing that about two hours after the homicide witnesses were at the house where the respondent, who was known to have done the killing, lived with his parents, and that he furnished them with cider and his mother showed them through the house which had been newly finished and papered, though respondent did not accompany them through the rooms.

5. WITNESSES—CROSS-EXAMINATION—PROPRIETY.
    Where, on a trial for homicide occurring during a quarrel over the cleaning out of a drain through defendants' farm, the county surveyor has testified in behalf of defendants to their peaceable disposition when the drain was originally constructed, he is properly asked on cross-examination if he has not made statements to the contrary.

* Continued from Vol. 146.

6. SAME—IMPEACHMENT.

Questions tending to impeach a witness are proper cross-examination.

7. SAME—IMPROPER QUESTIONS—GOOD FAITH—REVERSIBLE ERROR.

Propounding an improper question in good faith to a witness in a criminal case is not reversible error.

8. CRIMINAL LAW—TRIAL—ARGUMENT OF COUNSEL — DISCRETION OF COURT—REVIEW.

Courts of last resort will interfere with the exercise of the discretion of the trial court in controlling the argument of counsel only in cases where the attorney has clearly departed from the evidence and the line of legitimate argument to the evident prejudice of the opposite party.

9. SAME.

For the prosecuting attorney, in arguing a murder case to the jury, to say that the story of a witness was a "damnable yarn," that the respondent was as "vicious as a rattlesnake and as active as a hornet," and that if such affairs as this are to go unpunished the people would better discharge officers and defend themselves, is not reversible error, being based on the evidence, but is a question of good taste rather than of law.

10. HOMICIDE — SELF-DEFENSE — APPREHENSION OF DANGER — INSTRUCTIONS.

In charging the jury as to the belief of respondent arising from his surroundings and the circumstances of the homicide, which would justify it in self-defense, it is not error, in addition to the words "reasonable belief" and "honest belief," to use the expressions "reasonable cause to believe," "reasonable cause to apprehend," and "reasonable cause to believe and did believe."

11. CRIMINAL LAW—TRIAL—INSTRUCTIONS — BURDEN OF PROOF— DEFENSES.

An instruction not to acquit on the ground of self-defense unless such defense is established by the respondent, examined in connection with the remainder of the charge, and *held*, not reversible error, in view of clear instructions on the burden of proof, and it being apparent that the jury could not have been misled.

12. HOMICIDE—JUSTIFICATION.

Provisions of law forbidding work on Sunday do not justify an assault on a drain contractor attempting to prosecute work upon a drain across respondent's farm on Sunday.

13. SAME—TRESPASS.
   On a trial for homicide in killing a drain contractor who, by
      virtue of a deed of right of way, had a right to enter upon
      the land of respondent and work at clearing the drain there-
      on, instructions relative to trespassing beyond the limits of
      the right of way are properly refused, in the absence of any-
      thing to show that at the time of the homicide anything was
      being done not within the license granted.

Error to Eaton; Smith, J. Submitted February 15,
1906. (Docket No. 219.) Decided January 4, 1907.

George Tubbs was convicted of murder in the first de-
gree and sentenced to imprisonment for life in the State
prison at Jackson. Affirmed.

*Frank A. Dean* and *Garry C. Fox*, for appellant.

*Elmer N. Peters*, Prosecuting Attorney (*Lewis J.
Dann*, of counsel), for the people.

McALVAY, J. The respondent was, with his father,
Levi Tubbs, and his uncle, Charles Tubbs, jointly informed
against for the murder of John Boutts at the township of
Kalamo in Eaton county on November 20, 1904. He de-
manded a separate trial, which was granted, and which
resulted in a conviction of murder in the first degree on
May 4, 1905.

Levi and Charles Tubbs are the owners of a farm in
said township, through which, years before, had been laid
out and constructed a county drain; the right of way for
said drain 20 feet wide having been duly released by
them. The Tubbs farm is on the north side of the high-
way, which runs east and west in front of it. The drain
enters from the highway on the south line of the farm
some distance west of the house, and runs across to the
north line, making several angles in its course. The
water in the drain flows to the north. The deceased,
John Boutts, had a contract with the county drain com-
missioner for cleaning out portions of this drain, includ-

ing that part which crosses the Tubbs farm. This ditch is 2 to 3 feet in depth and averages 8 to 10 feet wide at the top. He commenced work on this portion of the drain towards the north end October 24, 1904, and continued until November 2, 1904. The work was done at the lower end first at the request of Charles Tubbs, who said that the corn would be husked and out of the way by the time that was completed. This corn grew in a field close to the drain on the upper portion. On the morning of November 1st, in driving along the ditch to his work, Boutts went through a portion of the corn alongside of it. Some words about driving into the corn arose between Charles Tubbs and Boutts. Respondent came up and engaged in the dispute with Boutts, whose wife stepped between them, and no blows were exchanged. There is evidence tending to show that at this time respondent declared he would kill the first man that tried to dig the ditch. This is denied by respondent and his uncle, Charles Tubbs.

This was the first time respondent and deceased had any words about the ditch. Deceased worked on the ditch that day with his wife, and when they returned next morning respondent and Charles Tubbs were there and a dispute arose about some grass which grew in the bottom of the ditch and which was cut by Boutts in order to do the digging and was carried away by him. By the request of the drain commissioner, who desired the water to have an outlet, Boutts worked on the lower end of the drain that day, so nothing occurred between the parties. Boutts next worked on this drain Friday afternoon, November 18th, at the lower part, finishing up and shoveling out the bottom. Respondent on Saturday, November 19th, went to the village of Nashville and purchased a revolver, for the purpose, as he said, of shooting a dog. On the same day Levi Tubbs went to Charlotte and saw drain commissioner Carr, telling him he would forbid putting dirt from the drain outside the right of way, and told him he would see that Boutts did not work there on Sun-

day.   The next morning, Sunday, November 20th, Boutts,
with two men, Powers and Bigley, as helpers, came along
the highway from the east and passed the Tubbs house,
for the purpose of going to work on the drain at a point
near the highway about 80 rods west of the house.   They
were seen by respondent and Levi and Charles Tubbs,
who at once left the house and started for the drain.
Charles Tubbs carried a walking stick, and respondent
was armed with his revolver.   Boutts and his workmen
were riding upon the wagon which carried the tools and
some tent stakes.   A team of horses was led behind.
They let down the fence, drove into the field, and began
to unload the tools.   While they were doing this, Charles
and Levi Tubbs came up.   Respondent was a little be-
hind them.   Boutts said, "Good morning."   Levi ordered
him off from the place and to take his tools off, telling
him he could not work there on Sunday.   Charles also
said he could not work there on Sunday.   Respondent
came up to Boutts at the back end of the wagon.   It is
in dispute whether or not he pushed against him with
his shoulder; but it is admitted that he asked him if he
was not going to leave.   Boutts said he was not; that he
had come there to ditch.   He walked around respondent
and continued to unload the tools.   When going along the
north side of the wagon, about the middle of the box, Levi
Tubbs stepped in front of him and took him by the shoul-
der and told him to get off the place.   Boutts said he had
no right to put his hands on him and follow him around
with a club.   Charles Tubbs advanced towards Boutts with
his stick in his hand, raised in a threatening manner.
Boutts reached into the wagon box, took up a tent stake,
and struck at and hit Levi Tubbs, who grabbed the stake,
and Boutts attempted to pull it away from him, but was un-
able to do so, and let go of it and took another stake from
the wagon.   Levi and Charles Tubbs, both with clubs in
their hands, advanced towards Boutts.   The man Powers
rushed in to stop the difficulty, and caught the stick
Charles had raised to strike.   Boutts started around the

back end of the wagon. Respondent was then some 10 or 15 feet away, and as Boutts, with his back towards respondent, was walking away from where Levi and Charles stood, respondent fired his revolver at him, missing him. Boutts turned partly around towards respondent, who fired again, killing him almost instantly. The men, Powers and Bigley, put Boutts into the wagon to take him away. Powers asked if the tools could remain there, and Levi Tubbs said, "No." The men drove away with Boutts' body, and the Tubbses dragged the tools out into the highway.

The cause is here upon exceptions after judgment. Errors are assigned upon overruling a challenge to the array, upon portions of the charge of the court, the refusal to charge as requested, and the argument of the prosecutor to the jury. The challenge to the array made to the court was oral. Respondent's attorney said:

"For the purpose of saving the record, I desire to interpose a challenge to the array and will have the clerk sworn."

The clerk was sworn and examined. The challenge was overruled and an exception taken. Respondent's attorney said that, in order to make the challenge effective, it was suggested to him it should be in writing and filed, and asked permission to prepare and file it later and treat it as being filed now. The court said:

"I thought it had been filed by what you said. Let me see it when it is filed."

A jury was selected and sworn, and the case proceeded to trial. Three days afterwards the challenge to the array was filed. The record does not show that it was called to the attention of the court, or that he ever saw it. It is well settled that a challenge to an array must be in writing. *People* v. *Doe*, 1 Mich. 451; *Ryder* v. *People*, 38 Mich. 269. No such challenge to the array as the practice requires was ever presented to or passed upon by the court.

Respondent must be considered to have waived such challenge.

Error is assigned upon the allowance of certain redirect examination of the witness Youngs, called by the people to show that respondent had purchased the revolver from him the day before the shooting. His testimony on the trial differed materially from that given for the people on the examination, and the court allowed the prosecutor to examine him with reference to such prior testimony. From the witness' testimony on the trial it appeared that he had been subpœnaed by respondent. He had materially modified his former testimony, and it was proper to permit the prosecution to read to him such of his former testimony as was material, and examine him upon it. This was done by reading two of his former answers, which he admitted were true. *People* v. *Case*, 105 Mich. 92; *People* v. *Gillespie*, 111 Mich. 241.

Two witnesses, Rouse and Clemens, testified as to what occurred at respondent's house about two hours after the homicide. Respondent at this time furnished the witnesses with cider. Mrs. Tubbs showed them through the house, which had been refinished and papered. They did not testify as to what she said. It is urged that it was error to allow testimony as to what she did. Respondent was present. He did not follow them through the rooms, but knew that they looked through the house. The testimony was properly admitted.

The question asked by the prosecutor of the county surveyor, who had been called to show the peaceable disposition of defendants when the drain was originally surveyed and laid out, was proper cross-examination, as tending to show that he had made statements to the contrary.

The error assigned upon certain cross-examination of Charles Tubbs is not meritorious. The questions answered were proper cross-examination and tended to impeach the witness. One question objected to was held by the court not proper, and was not answered. Propounding such

questions in good faith is not reversible error. *Knicker-bocker* v. *Worthing*, 138 Mich. 239, and cases cited.

Several errors are assigned upon the statements of the prosecutor made in his argument in closing the case. The whole argument is not in the record, and none of the argument for the respondent appears. Many of the statements are claimed by the prosecutor to have been made in answer to attacks made by respondent's counsel upon certain of the people's witnesses, and the trial judge indicates that this was the fact. Ordinarily these matters must be left to the sound discretion of the trial court, who hears the entire arguments of counsel, and can better judge whether the language is justified by the arguments of the opposing counsel. Courts of last resort will interfere by granting a new trial only in a case where the attorney has clearly departed from the evidence and the line of legitimate argument, to the evident prejudice of the opposite party. *People* v. *Conley*, 106 Mich. 427. It was held not reversible error to call respondent "the lowest of dead beats." *People* v. *Winslow*, 39 Mich. 505. So it was held not error for the prosecutor to say to the jury that a witness lied. *Driscoll* v. *People*, 47 Mich. 414. The court, speaking through Justice CAMPBELL, said:

"As it was apparently within the proper range of the prosecution to insist before the jury that Fennell was a false witness, the matter became a question of good taste, and not of law."

*That* language was certainly as objectionable as, in the case at bar, to call the story of a witness "a damnable yarn," or to say that the respondent was as "vicious as a rattlesnake and active as a hornet." Further language of the prosecutor relied upon as constituting reversible error, necessary to be considered, is his statement that, if affairs of this kind should go unrebuked and are justified by the verdict of a jury, each man would better protect himself, that they would better discharge officers, and buy ammunition for the purpose of self-protection. This was said in

the heat of an argument, at the close of a hotly contested case. It is not language which meets with our approval, nor does it display that good taste Justice CAMPBELL suggested in the *Driscoll Case*, supra. It was, however, not in the nature of an appeal to the passions and prejudices of the jury. The language amounted to no more than to say to the jury that, if criminals cannot be convicted upon testimony as clear and convincing as that in this case, prosecutions are useless, and the people must defend themselves.

Courts have seldom reversed convictions in criminal cases for the language of the prosecutor in denouncing the conduct of a respondent, or a witness, when such language is based upon the record. They frequently reverse cases where the prosecutor has thrown his own belief into the scale, or has based an argument on matters not appearing on the record, or used language clearly prejudicial. Courts will be very slow to reverse a case for the language of the prosecutor, which, in his judgment and that of the trial court, is based upon the evidence in the case. The language complained of was based upon the evidence and "became a question of good taste, and not of law."

The exceptions to the charge of the court and the refusal to give certain requests presented by respondent may be considered in groups: .

(1) Those relating to the law of self-defense.

(2) Those relating to the evidence of previous good character.

(3) Those relating to the fact that deceased and his workmen were upon these premises on Sunday, and contrary to the Sunday statute prohibiting work, and were trespassers, who could be forcibly ejected.

(4) Those relating to trespassing beyond the right of way.

1. It is urged that the court, in charging the jury as to the belief of respondent arising from his surroundings and the circumstances at the time of the homicide, which would justify it in self-defense, in addition to the words "reasonable belief," and "honest belief," erred in using

the expressions "reasonable cause to believe;" "reasonable cause to apprehend;" "reasonable cause to believe and did believe."

In a recent case, where the whole charge properly stated the law of self-defense, this court held it was not error to use the same expressions claimed in the case at bar to be erroneous. In that charge the trial judge said:

"But he may act upon a reasonable belief arising from appearances which give him reasonable cause for believing that danger was actually imminent, although it may turn out that he was mistaken. His guilt or lack of it depends upon the circumstances as they appeared to him."

The judge also charged in that case that if respondent .actually believed that the person killed "was about to do him great bodily harm, and had any reasonable ground for such belief," etc. *People* v. *Farrell,* 146 Mich. 264.

Error is assigned upon the following words of the judge in his charge, being one clause of a sentence:

"And, unless such facts constituting such reasonable cause have been established by the defense in the case, you cannot acquit on the ground of self-defense."

This exception, as well as the one just considered, must be determined in the light of the rule that a single sentence or a part of a sentence cannot be isolated, and, standing alone, made the subject of reversible error, if, upon the entire charge, it can fairly be said that the jury were not misled. Applying that rule to this case, we do not think there is any ground for saying that the jury understood that the burden of the proof of the respondent's innocence was cast upon him. At the commencement of his instruction the learned trial judge clearly and emphatically instructed the jury that the respondent was presumed innocent until proven guilty; that no man could be convicted until proof was brought establishing his guilt; *that the presumption of innocence attended him all through the case until overcome by evidence which should convince them beyond a reasonable doubt of guilt; and that such presumption applied to every*

*element of the offense necessary to the conviction.* He then in clear language defined a reasonable doubt, and murder in the first and second degrees, and manslaughter.

He then stated the theories of the prosecution and the defense, after which he instructed the jury as follows:

"If you find from the proofs in the case and have any reasonable doubt in your minds whether or not the respondent shot Boutts for the reason that he believed at the time he fired the shots that his father, Levi Tubbs, was in danger of death, or great bodily harm at the hands of John Boutts, and fired the shots in defense of his father, then you should acquit him, and return a verdict of not guilty.

"The right to defend one's self against danger not of his own seeking is a right which the law guarantees to all men; and the same right which exists to protect one's self exists also for the protection of those dependent upon him, such as members of his family. In this case defendant had the same right to protect his father that he would have had to protect himself in a like situation, though the danger was threatened to his father, and not to himself. If at the time the defendant shot the deceased, John Boutts, he had reasonable cause to apprehend on the part of the deceased a design to do his father, Levi Tubbs, great personal injury, and there was reasonable cause for him to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger he shot, and at the time he did so he had reasonable cause to believe it necessary for him to shoot in the way he did, to protect his father from such apprehended danger, then and in that case the shooting was not felonious, but was justifiable, and you ought to acquit him upon the ground of necessary self-defense. It is not necessary to this defense that the danger should have been actual or real, or that the danger should have been impending and immediately about to follow. All that is necessary is that the defendant had reasonable cause to believe and did believe these facts. But before you acquit on the ground of self-defense you ought to believe that defendant's cause of apprehension for his father was reasonable. You are to determine from all the evidence whether facts constituting such reasonable cause have been established; and, unless such facts constituting such reasonable cause have been established by the defense in this case, you cannot acquit on the ground of self-defense, but his actions

and conduct are to be judged from the circumstances as they appeared to him at the time. He had the right to act under the circumstances as they appeared to him at the time, and if from all the evidence in the case there exists in your minds a reasonable doubt whether the respondent did not in fact kill John Boutts in defense of his father, honestly believing his father's life was in jeopardy, or that he was in danger of receiving serious bodily injury at the hands of Boutts, then it would be your duty to render a verdict of not guilty."

It was clearly not the intention of the judge to say to the jury that the burden rested upon the respondent to prove his innocence. When the charge is read as a whole, it conclusively appears that the jury could not have been misled by the language complained of. It is evident from the entire charge that the burden was placed upon the people to establish the respondent's guilt beyond a reasonable doubt. This is apparent from that part of the sentence immediately following that which is claimed as error, viz. :

" But his actions and conduct are to be judged from the circumstances as they appeared to him at the time. He had the right to act under the circumstances as they appeared to him at the time, and if from all the evidence in the case there exists in your minds a reasonable doubt whether the respondent did not in fact kill John Boutts in defense of his father, honestly believing his father's life was in jeopardy, or that he was in danger of receiving serious bodily injury at the hands of Boutts, then it would be your duty to render a verdict of not guilty."

The law of self-defense was correctly stated by the court and the requests in relation thereto properly refused.

2. The jury were correctly charged as to the evidence relative to respondent's previous good character.

3. The requests relative to the law forbidding work on Sunday justifying the assault upon Boutts were properly refused. The court correctly charged that the propositions urged, based upon said law, did not apply to the case.

4. By the deed of the right of way deceased had a right to enter upon the land and work at clearing the drain.

There was no evidence that on this occasion anything was being done not within the license granted. The court therefore properly refused to charge as to trespassing beyond the right of way of the drain.

We do not find reversible error in the case. The conviction is affirmed.

GRANT, BLAIR, MONTGOMERY, and MOORE, JJ., concurred.