PEOPLE *v.* DAVIS.

1. CRIMINAL LAW—WANT OF TESTIMONY ON EXAMINATION—JUS-
TICES OF THE PEACE—INTOXICATING LIQUORS.

   After a jury had been sworn in a criminal action for keeping
   open respondent's saloon on Sunday, it was too late to raise
   the objection that the prosecution had offered no evidence
   before the examining justice to show that defendant was a
   saloon keeper, or had filed the statutory bond, or had secured
   a liquor dealer's license.

2. SAME—QUASHING PROCEEDINGS—MOTIONS.

   The question should have been raised by motion to quash be-
   fore the accused had been placed in jeopardy.

3. SAME—EVIDENCE—PUBLIC OFFICERS—WITNESSES.

   The prosecuting attorney was properly permitted to testify in
   identification and proof of records obtained by him from the
   office of the county treasurer to establish the fact that re-
   spondent had qualified as a liquor dealer, and further to give
   testimony that the accused had posted the required receipt
   or license card in his place of business.

4. SAME—COUNTY TREASURER'S OFFICE—PROOF OF PUBLIC REC-
ORDS.

   That the prosecutor also stated he knew nothing about the
   records except what he had been told, did not render the evi-
   dence inadmissible, upon proof being made that the records
   were obtained from the office of the county treasurer.

5. SAME—PUBLIC RECORDS AS EVIDENCE.

   When public records are produced and shown to have come
   from the proper official depository they are sufficiently
   proved.

6. SAME—TRIAL—CROSS-EXAMINATION.

   The court committed no abuse of discretion in limiting respond-
   ent's attorney, who repeatedly asked the same or similar
   questions concerning the motive of a witness who claimed to
   have purchased liquor on Sunday and in permitting no
   further cross-examination on that line after respondent's
   attorney had twice cross-examined the witness and had ap-
   parently concluded.

   171 MICH.—16.

7. SAME—APPEAL AND ERROR—ARGUMENT—CONDUCT OF PROSE-
CUTING ATTORNEY.

> Criminal cases are not usually reversed on account of impas-
> sioned or questionable argument of the prosecuting attorney,
> unless the arguments were unwarranted by the evidence and
> probably contributed to the conviction; when the trial judge
> interposes to correct the effect of such improprieties his ex-
> ercise of discretion will not usually be disturbed.

8. SAME—TRIAL—REASONABLE DOUBT.

> *Held*, that the charge of the court explaining the meaning of a
> reasonable doubt was, considered as a whole, correct.[1]

Exceptions before sentence from Mason; Withey, J.
Submitted June 13, 1912. (Docket No. 131.) Decided
July 11, 1912.

Benjamin D. Davis was convicted of keeping open his
saloon on Sunday in violation of 2 Comp. Laws, § 5395
*et seq.* (2 How. Stat. [2d Ed.] § 5071 *et seq.*) Affirmed.

*Henry G. Reek*, Prosecuting Attorney, and *Franz C.
Kuhn*, Attorney General, for the people.

*F. E. Wetmore*, for respondent.

STEERE, J. Respondent was convicted in the Mason
county circuit court of keeping open his saloon in the city
of Ludington on Sunday, October 1, 1911, in violation of
the statute regulating sale of intoxicating liquors. Pre-
liminary examination was had before a committing mag-
istrate, in which testimony was introduced by the prose-
cution tending to show that on the day in question a wit-
ness visited respondent's saloon in company with respond-
ent's barkeeper, who had, in answer to an inquiry if there
was any drink going around, told him that "he guessed he
could slide some," and led the way around through a back
alley, entering the saloon by the back door, where witness
was served with whisky and beer, saw respondent there,
and treated him and another who was present.

---

[1] Propriety of instruction to the effect that a reasonable doubt is
one for which a reason can be assigned, see note in 16 L. R. A. (N.
S.) 260.

No testimony was offered in behalf of respondent, and he was bound over to circuit court for trial. When arraigned in the circuit court, he stood mute and refused to plead to the information filed against him, whereupon a plea of not guilty was entered by order of the court in his behalf. On January 3, 1912, his case was brought on for trial before a jury duly impaneled and sworn. The prosecution then called a witness, who was sworn to testify and was about to be interrogated, when counsel for respondent objected to the introduction of any evidence in the case for the reason that the return of the magistrate, purporting to contain all the evidence taken on the preliminary examination, disclosed no testimony to the effect that respondent was a saloon keeper within the meaning of the statute, it not being shown that he had filed a bond, or taken out a license qualifying him to maintain a lawful saloon at times when sales were not forbidden. This objection was overruled, and error is assigned on such ruling.

The objection came too late. If the point could have been well taken at any time, counsel should have moved to quash the information and dismiss respondent before the jury was sworn. In *People* v. *Brott*, 163 Mich. 150 (128 N. W. 236), it was said:

"The motion to quash for want of testimony before the justice on the examination was properly overruled. Upon that question, also, the magistrate was permitted to act without his attention being called to this claim, which was first raised at circuit after the jury was sworn, and when a discharge on a technical point might be final, by reason of defendants having been in jeopardy."

During the progress of the trial Henry G. Reek, the prosecuting attorney, was sworn as a witness for the purpose of proving records from the county treasurer's office showing that defendant had taken the regular steps qualifying him to legally conduct a saloon where intoxicating liquors were sold at the place alleged. Under objection, said witness was permitted to testify that a liquor license, or red card, or receipt, containing respondent's name, was

posted up in his place of business; that he had examined the records in the county treasurer's office with reference to retail liquor dealers' bonds; that he there found a liquor dealer's bond, filed April 26, 1911, executed by respondent as principal, bearing the filemark C. F. Meads, county treasurer, which he produced, identified, and offered in evidence. Said witness also identified as an official record taken from the county treasurer's office, and offered in evidence, a record of liquor licenses of the county. On cross-examination witness testified that he was not county treasurer, nor a deputy, and what he knew of the record was what he had been told.

For the purpose of identifying the proprietor, it was proper for the witness to testify as to a license card posted up in the saloon, and its contents. *People* v. *Baumann*, 52 Mich. 584 (18 N. W. 369).

While it is more regular, reliable, and indicative of proper official care and responsibility for public records to be produced and identified by the legal custodian rather than a borrower, the bond and record of licenses issued were testified to be from the county treasurer's office, the proper place therefor. The record of licenses is of that class of writing known as "official registers," kept by persons in public office, in which they are required either by statute or the nature and demands of their office, to record certain official transactions in the routine of their regular duties. Such records, when identified, are generally admissible in evidence, notwithstanding their authenticity is not sustained as to their contents by the testimony either of the person who knew the facts recorded, or who made the record, and upon whose authority and integrity the truth of the record depends. When such books are produced, and shown to have come from the proper official depository, they are, as a rule, admissible in evidence without further attestation. 1 Greenleaf on Evidence, § 485. It is true that the witness, after testifying that the record of liquor licenses issued, which he produced and offered in evidence, was the official record kept by the

county treasurer of Mason county, further answered, on cross-examination, that all he knew of the records was what some one else told him. But he also testified that he found them in the treasurer's office. The effect of such apparently inconsistent statements went to the sufficiency and probative force of such evidence, rather than its admissibility, and was a question of fact for the jury rather than of law for the court. His testimony as to the liquor dealer's bond, a file of the county treasurer's office, was more specific and properly admissible under *McLeod* v. *Crosby*, 128 Mich. 641 (87 N. W. 883).

Error is alleged on the following ruling:

"*Q.* Mr. Papke, when you went there to Mr. Duyer's room on this Sunday, which you told us about, to get him to go to that saloon, was it because you really wanted a drink, or was it because you wanted to get him to violate the law ?

"*The Court:* You have been all over that, and asked exactly the same question. Once will do."

Aside from the reason given by the court for the ruling, the record shows that the witness had been twice before thoroughly cross-examined by counsel until apparently through and satisfied. Numerous derogatory questions had been asked him along the same lines, the court allowing ample latitude in that particular. Control of cross-examination as to motive, purpose, and intent, as bearing on the credibility of a witness is largely within the discretion of the trial judge, and we find no abuse of discretion in the ruling complained of.

It is claimed respondent's rights were prejudiced, and the case should be reversed, because of improper comments by the prosecuting attorney while making his argument to the jury. The record only gives such fragmentary and disjunctive expressions from his address as objections were made to, leaving the cause and context largely to conjecture, though it is manifest in some instances and inferable in others that his remarks were in response to arguments or statements of respondent's

counsel.    The following expressions are those most seriously complained of:

"I want to say first that these cases, prosecutions of saloon cases, are very difficult cases.    *   *   *    Further, that it is difficult to make local witnesses stand up in cases of this character.

"*Mr. Wetmore:* I take exception to that statement. *   *   *

"*The Court:* Yes; it is objectionable.    Disregard it, gentlemen of the jury.

"*Mr. Reek,* Prosecuting Attorney: Very well, then, I want to say further that in order, where there are liquor violations, that in order to get convictions, to get men to stand up, you have got to get men from sources where they are not under local influence.

"*Mr. Wetmore:* I take an exception to that remark.

"*The Court:* I am inclined to think that is all right.

"*Mr. Wetmore:* An exception.

"*The Court:* It refers to the weight to be given to the detective's testimony, I suppose, and to the remarks that have been passed on the subject by the other side.   *   *   *

"*Mr. Reek:* I say he had to do something, my good friends, he did something, and this wasn't the only job he did.

"*Mr. Wetmore:* I object to that remark as being entirely outside of the evidence.

"*Mr. Reek:* Yes, but your honor; there was nothing in the case that would call for the attorney for the defendant to remark that 'he had to do something at that particular time.'

"*The Court:* Strike it out, gentlemen, the statement that he did any other job, and you will disregard it.

"*Mr. Reek:* Very well, if the court objects to it, I will take it back.   *   *   *    It is all a matter of defense, and Duyer is associated with Davis, and drinks out of the same whisky glass.   *   *   *    I say why didn't they furnish me with Spike's right name at that time, instead of waiting until after Spike was fixed up to go on the witness stand, and make a monkey of himself as he did yesterday.

"*Mr. Wetmore:* I take an exception to that remark.

"*The Court:* Yes; I don't think that was a legitimate remark, or a legitimate argument.    Disregard that, that Spike had been fixed up.    It is stricken out.

"*Mr. Reek:* Well, then, I will say instead of fixed up, I will say until they knew what he would testify to.

"*Mr. Wetmore:* I take an exception to that remark.

"*The Court:* I think that is in the same category. The same ruling, the same caution to the jury.

"*Mr. Reek:* And Spike isn't a myth, because Spike appears. He actually appears here. He appears here finally. Davis brings Spike in finally—

"*Mr. Wetmore:* I take an exception to that remark.

"*The Court:* Oh, I suppose that refers to the fact that counsel for respondent told the prosecutor who he was and what his name was."

While these remarks, on their face and unexplained, are not very intelligible and appear somewhat unseemly, they evidently are, for the most part, in the nature of retorts in answer to comments of opposing counsel. In view of the rulings of the court and cautions given the jury, we are not able to regard them as more prejudicial to one side than the other, if at all, and cannot say from the record that they were, as checked and treated by the court, so prejudicial to the rights of defendant as to present reversible error. We regard it rather as a question of good taste than of law.

" Ordinarily these matters must be left to the sound discretion of the trial court, who hears the entire arguments of counsel, and can better judge whether the language is justified by the arguments of the opposing counsel." *People* v. *Tubbs*, 147 Mich. 1 (110 N. W. 132).

" We are not disposed to reverse convictions in criminal cases because of the impassioned arguments of the prosecuting officers, unless we can clearly see that such arguments were unwarranted by the evidence and probably contributed to the result." *People* v. *Peck*, 147 Mich. 84 (110 N. W. 495).

Error is alleged on the following brief excerpt from the court's charge touching reasonable doubt:

" A doubt which would cause you to hestitate in the ordinary affairs of life."

This is claimed to be reversible error on the strength of *People* v. *Albers*, 137 Mich. 678 (100 N. W. 908). The

language there used, and held by the court to be improper, was as follows:

"Whatever would convince you beyond a reasonable doubt, in the judgment which you use in your ordinary affairs of life, is all that is necessary to convince you, sitting as jurors, in any criminal case."

The language made use of by the trial court in this case, though questionable considered alone, does not import the same limitation when read in connection with that which goes before and after. The court instructed the jury that the respondent was presumed innocent until proven guilty, and that the presumption of innocence was with him all through the case until the testimony tore it away, and then said:

"No man can be convicted of crime in this jurisdiction until his guilt is established beyond a reasonable doubt. A 'reasonable doubt' is what the word implies; a doubt founded in reason; a doubt for which you can give a reason; a doubt growing out of the testimony in the case, or the lack of testimony; a doubt which would cause you to hesitate in the ordinary affairs of life. It is not a flimsy, fanciful, fictitious doubt which you could raise about anything and everything. It means a reasonable doubt. If, when all is said and done, you have such a doubt about the guilt of the accused, it is your duty to acquit him."

This, taken as a whole, is very different from instructing the jury that a doubt which they use in the ordinary affairs of life is all that is necessary to convince them sitting as jurors in any criminal case. This case is preeminently one of facts, limited to a comparatively narrow issue, which depends on the credit given by the jury to witnesses who swore in direct contradiction as to the main facts in relation to which it was impossible to be honestly mistaken.

We think the trial court fairly and impartially submitted this plain issue to the jury, with plain and correct instructions, considered as a whole, as to the rules of law

involved and their rights and duties in deciding the facts within their province.

We find no reversible error, and the case will stand affirmed.

MOORE, C. J., and McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred. BLAIR, J., did not sit.