## PEOPLE v LARRY

Docket No. 91672. Submitted May 5, 1987, at Detroit. Decided August 3, 1987.

Quinton L. Larry was convicted of second-degree criminal sexual conduct following a jury trial in Detroit Recorder's Court and sentenced to from ten to fifteen years in prison by the trial court, Geraldine B. Ford, J. Defendant appealed, raising several issues.

The Court of Appeals *held:*

1. The Michigan Criminal Jury Instructions do not have the official sanction of the Supreme Court. Their use is not required, and trial courts should examine them carefully before use to ensure their accuracy and appropriateness in a given case. In this case, while the trial court departed from CJI 3:1:18 when instructing the jury regarding deliberations and its verdict and did not specifically instruct the jurors that they must not sacrifice their own independent judgment for the sake of unanimity, no error requiring reversal resulted. The instructions did not coerce the jurors to reach a unanimous verdict.

2. Defendant did not timely object at trial to the trial court's instructions on reasonable doubt and to the trial court's failure to instruct on alibi and lesser included offenses. Reversal is not mandated in the absence, as in this case, of timely objection or manifest injustice.

3. References by the prosecutor to "rape" and to defendant as the man "who tried to rape" the complainant were supported by evidence introduced at trial and were not prejudicial to defendant.

4. Defendant's claims that the trial court erred in finding

REFERENCES

Am Jur 2d, Appeal and Error §§ 602, 623, 778, 891, 894.

Am Jur 2d, Trial §§ 574, 577, 877.

Am Jur 2d, Witnesses §§ 73, 137, 472, 475, 479, 507.

Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense. 15 ALR4th 118.

Duty of court, in absence of specific request, to instruct on subject of alibi. 72 ALR3d 547.

Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.

that the eleven-year-old complainant was competent to testify and that the trial court should have given defense counsel an opportunity to examine the complainant as to her competency were found to be without merit. The burden of determining competency is placed squarely on the trial court and questions by counsel are not proper.

5. The trial court erred in allowing a police officer to testify from his police report, over objection by defense counsel, without a proper showing that the officer needed his memory refreshed or that he lacked knowledge of the case. However, the error was harmless and does not require reversal.

6. Neither error nor prejudice to defendant resulted from a discussion in the jury's presence concerning the deletion of a statement regarding the term "rape" in a line-up sheet introduced as an exhibit. The statement objected to was not read to the jury and the jury was advised that deletions in some documents were made on the basis of materiality.

7. The trial court did not abuse its discretion in interrupting defense counsel's cross-examination of a witness. The trial court did not deny defense counsel the right to continue questioning, but only requested that counsel state his questions in a different manner so that the witness could understand the questions.

8. The line-up from which defendant was identified by the complainant was not conducted in an impermissibly suggestive manner. Counsel was present at the line-up, the men in the line-up closely approximated the description given by the complainant, and no prejudice to defendant resulted from complainant's being informed that her attacker was in the line-up. Even if the line-up were to be found suggestive, there was an independent basis for the in-court identification.

9. Defendant's claim that he was denied effective assistance of counsel at the line-up was not reviewed by the Court of Appeals based on the lack of a motion to suppress evidence of the identification or a motion for an evidentiary hearing.

10. The trial court adequately stated its reasons for imposing a sentence harsher than that recommended by the sentencing guidelines and the sentence imposed did not shock the judicial conscience of the Court of Appeals.

Affirmed.

1. CRIMINAL LAW — CRIMINAL JURY INSTRUCTIONS.

The Michigan Criminal Jury Instructions do not have the official sanction of the Supreme Court; their use is not required, and trial courts should examine them carefully before use to ensure their accuracy and appropriateness in a given case.

2. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

The Court of Appeals will not reverse a defendant's conviction on the basis of alleged errors in the trial court's instructions to the jury unless a timely objection was made at trial or manifest injustice would result.

3. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

Jury instructions, which are challenged on appeal as erroneous, are reviewed in their entirety and not extracted piecemeal from the transcript.

4. CRIMINAL LAW — JURY INSTRUCTIONS — REASONABLE DOUBT.

A trial court does not err in instructing the jury regarding reasonable doubt by referring to the jurors' "ordinary affairs of life."

5. CRIMINAL LAW — JURY INSTRUCTIONS — DEFENSES — ALIBI.

No prejudice or manifest injustice results to a defendant where the trial court gives only a "reasonable doubt" instruction as to alibi.

6. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFEN-SES.

A trial court does not err in failing to give a jury instruction on a lesser included offense to the crime charged where there was no request for the instruction and no objection was made at trial.

7. WITNESSES — COMPETENCY OF WITNESSES.

Every witness is presumed competent to testify unless the trial court finds the person to be incompetent (MRE 601).

8. WITNESSES — CROSS-EXAMINATION — APPEAL.

A trial court has great discretion in limiting cross-examination and such discretion is not subject to review unless a clear abuse of discretion is shown (MRE 611[a]).

9. CRIMINAL LAW — IDENTIFICATION — LINE-UPS.

The question of suggestiveness in the manner in which a defendant's identification from a line-up was conducted will not be reviewed on appeal where no motion to suppress the identification evidence was made at trial.

10. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES.

It is not an abuse of discretion for a trial court to rely on some of the same factors already considered in the sentencing guidelines as a basis for departing from the recommended minimum sentencing range; the sentencing judge may justifiably conclude

that the guidelines give inadequate weight to certain factors or that the facts of the case warrant a more severe sentence.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Divison, Research, Training and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Sheldon B. Greenblatt,* for defendant on appeal.

Before: BEASLEY, P.J., and HOOD and E. E. BORRADAILE,* JJ.

E. E. BORRADAILE, J. Defendant appeals as of right his conviction of criminal sexual conduct in the second degree, MCL 750.520c; MSA 78.788(3). Defendant was tried before a jury in Detroit Recorder's Court and sentenced to from ten to fifteen years in the state penitentiary.

During the early morning hours of June 29, 1985, the complainant, an eleven-year-old girl, was asleep in her bed with her sister when a man entered her room, tripped on some clothes and fell against her bed. She woke up and looked at his face. The man put some covers on her and left the room. He returned about a minute later, got on top of her, and grabbed her buttock. She managed to struggle free and call her mother at which time the man ran out of her room. He ran toward the back door, while the complainant ran toward her mother's room near the front of the house.

The complainant woke her stepfather. He and her cousin searched the house but did not find anyone and the stepfather went back to bed. Shortly after returning to bed, the complainant's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

stepfather heard a noise in the basement and called the police. Complainant described the man to her mother and stepfather as someone they knew from the neighborhood. She said that he had a green Cadillac and wore a hat that had the words "Get Paid" on it. At trial the girl's mother testified that she recognized the description of the man. The police arrived at the complainant's house at approximately 6:45 A.M. and found a basement window open and the screen removed. The police, with the complainant and her mother, went over to the house where the complainant said the man lived. The mother went in and got the name "Quinton" from a young girl in the house. The police subsequently arrested the defendant and placed him in a line-up. The complainant picked out the defendant with no hesitation.

The defendant, on appeal, has raised a number of questions concerning, among other things, the prosecutor's comments in final argument, the trial court's decisions regarding the competency of witnesses and the production of evidence, the trial court's interruption of defense counsel during cross-examination, the final instructions to the jury, the identification procedure, and sentencing. We affirm.

I

The issue which requires the greatest discussion relates to the trial judge's failure to give in full the language from Criminal Jury Instruction 3:1:18 concerning the jury's procedures in deliberations and verdict. The trial judge, after advising the jury that the matter of punishment was not within the province of the jury, stated:

When you retire to the Jury Room, you will elect a foreperson who will preside over your

deliberations and who will be your spokesperson in court.

Upon the count in the Information charging Criminal Sexual Conduct in the Second Degree, you may find the defendant guilty or you may find him not guilty.

And I am confident you know that in order to render a verdict, your decision will have to be unanimous.

And I would again remind you this matter is not to be discussed except when you are all assembled in the Jury Deliberation Room.

Before the jury was sent out to deliberate, the trial judge inquired of each counsel if there were any omissions or misstatements and both indicated that there were none.

Defendant claims that because five of the jurors had previously served on other juries they would influence the other jurors by reason of their experience. Defendant contends that the trial judge erred so as to require reversal by failing to advise the jurors that they must not sacrifice their own independent judgment for the sake of unanimity. Defendant admits that the jury was polled, but claims that the record is silent as to juror peer pressure.

Defendant argues that the instruction should have been the same as that contained in *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), which was made applicable to nondeadlocked juries in *People v Goldsmith,* 411 Mich 555; 309 NW2d 182 (1981); *People v Janice Davis,* 135 Mich App 602; 354 NW2d 274 (1984).

In *People v Hardin,* 421 Mich 296, 313; 365 NW2d 101 (1984), the Supreme Court, when dealing with the issue raised in this case, stated:

There is absolutely no indication in *People v*

*Sullivan* that coercion is not a relevant inquiry. In *Sullivan,* we simply held that the coercive effect of an *Allen* [*Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896)] charge can be eliminated. Moreover, our statement to the effect that substantial departure from ABA instruction 5.4 shall be grounds for reversible error does not eliminate the relevancy of coercion to the ascertainment of whether the departure is "substantial."

Indeed, in *People v Goldsmith,* 411 Mich 555; 309 NW2d 182 (1981) (per curiam), this Court impliedly recognized that even ABA instruction 5.4 was somewhat coercive. We issued the opinion in *People v Goldsmith* to make it clear that a proper *Sullivan* instruction *may* be given as part of the main charge to the jury. We asserted that the effect of delivering the ABA charge prior to deliberations differed from its effect when given in a deadlocked situation. "When given during the original instructions, the ABA charge's coercive impact upon the jury is greatly diminished." *Id.,* p 559. [Emphasis changed.]

We might note that in *People v Petrella,* 424 Mich 221, 277; 380 NW2d 11 (1985), our Supreme Court has said:

Moreover, we remind the bench and bar once again that the Michigan Criminal Jury Instructions do not have the official sanction of this Court. Their use is not required, and trial judges are encouraged to examine them carefully before using them, in order to insure their accuracy and appropriateness to the case at hand.

The *Sullivan* case, *supra,* dealt solely with a supplemental instruction relating to a jury which had deadlocked or appeared to be having problems arriving at a verdict. The *Sullivan* Court discussed the ABA Project on Minimum Standards for Crim-

inal Justice, noting the standards relating to trial by jury were approved by the House of Delegates in 1968. Section 5.4, which is set forth in *Sullivan, supra,* p 335, is substantially the same language as contained in CJI 3:1:18. We might note that the Criminal Jury Instruction Committee on August 5, 1985, added CJI 3:1:18A, dealing with a deadlocked jury, which adds some additional language indicating that the jury has returned from deliberations with an inability to reach a verdict.

The tentative draft of the ABA Project on Minimum Standards for Criminal Justice printed in May, 1968, has little discussion other than to say that, as to section 5.4(a),

> for the reasons set forth in the commentary to section 5.4(b), *infra,* the advisory committee has concluded that the instruction commonly referred to as the *Allen* charge, or "dynamite" charge should not be given to a jury which has been unable to agree after some deliberations. Nonetheless, it is most appropriate for the court to instruct the jury initially as to the nature of its duties in the course of deliberations, and section 5.4(a) so provides. The standard does not require the use of any particular language, but does identify the five points on which the jury might properly be advised.

The ABA committee notes that the instruction proposed is similar to instruction 8.11 of Jury Instructions and Forms for Federal Criminal Cases, 27 FRD 97-98 (1961), which in addition to the language proposed in 5.4(a) indicated: "You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case." The committee goes on to note that the charge proposed makes no reference to a minority and instead requires that all

jurors consult with one another. The committee felt that the proposed instruction did not have the coercive impact of the *Allen* charge. The committee notes that in *Burroughs v United States,* 365 F2d 431 (CA 10, 1966), the practice provided for in section 5.4(a) was recommended. However, we note that in the *Burroughs* case the defendant challenged the trial court's instruction because the court put a limit on the length of time for deliberation by the jury. The issue was raised as to the coerciveness of the instruction in that case.

The same issue was dealt with in *People v Janice Davis, supra,* where a challenge was raised as to the coercive effect of the original instruction by the trial judge. While the panel dealt with the language of CJI 3:1:18 in referring to the ABA proposed instruction, we are satisfied that this case is distinguishable from the *Janice Davis* case because there was no coercion in the instruction given by the trial judge.

In *State v Watkins,* 99 Wash 2d 166, 175; 660 P2d 1117, (1983), the Washington Supreme Court dealt with the ABA standards and specifically standard 5.4, noting in a footnote: "An instruction similar to the ABA recommendation is set forth in WPIC 1.04, which recommends that the instruction be given in every case before the jury retires." No note as to use is provided by the Criminal Jury Instruction committee in CJI 3:1:18 and we cannot find error in this case based on the failure of the trial judge to give the instruction where it is quite clear that the trial judge did not act coercively in instructing the jury relative to its deliberations.

MCR 2.516(B)(3) provides:

> After the arguments are completed, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party re-

quests as provided in subrule (A)(2), that party's
theory of the case. The court may, in its discretion,
make comments on the evidence, the testimony,
and the character of the witnesses as the interests
of justice require.

In the proposed rules of criminal procedure found
at 422A Mich 148, MCR 6.407(G) would, if adopted,
set up language under the rules of criminal proce-
dure but that language shows "after closing argu-
ments are made or waived, the court shall instruct
the jury as required or permitted by law, but if the
parties consent, the court may instruct the jury
before the parties make closing argument."

Defendant raises a number of other objections
concerning the trial court's instructions on reason-
able doubt and failure to instruct on alibi and
lesser included offenses. As noted above, no timely
objection was raised to the instructions and for
error to result in reversal there must be either
timely objection or manifest injustice. *People v
Jones,* 78 Mich App 309, 314; 259 NW2d 359
(1977). The Michigan Supreme Court in *People v
Kelly,* 423 Mich 261, 270; 378 NW2d 365 (1985),
indicated that, in determining the effect of jury
instructions, they must be reviewed in their en-
tirety and not extracted piecemeal from the tran-
script.

Specifically on reasonable doubt, defendant
takes exception to the trial court's use of "rely and
act upon in the most important of your own af-
fairs" in the instructions on reasonable doubt. In
*People v Davis,* 171 Mich 241, 248; 137 NW 61
(1912), the Supreme Court found no error in the
use of "your ordinary affairs of life" when read in
connection with the entire instruction which ade-
quately set forth the meaning of reasonable doubt.
We find in this case that the court has not erred.

Defendant claims that the trial judge should have given the "perfect defense" instruction for alibi, but this Court has ruled in *People v Prophet,* 101 Mich App 618, 628; 300 NW2d 652 (1980), that no prejudice or manifest injustice results to a defendant when the court gives only the reasonable doubt instruction as to alibi.

Appellate counsel in this case claims that the trial court should have sua sponte given an instruction on lesser included offenses even though trial counsel requested that no instructions be given on lesser included offenses and made no objection when the trial court did not give any such instruction. In *People v Pixler,* 134 Mich App 143, 145; 350 NW2d 765 (1984), this Court has found that a trial judge did not err in failing to instruct as to a lesser included offense when such instruction was not requested and defense counsel did not object when such instruction was not given.

II

Defendant has raised a number of other questions on appeal with which we will deal briefly.

Defendant objects to the prosecutor's use of the word "rape" in both his opening and closing arguments to the jury. Defense counsel objected to the prosecutor's referring to the victim's identification of defendant as the "one who tried to rape me" but that statement was in fact brought out in the victim's testimony and she was referred back to the preliminary examination where she stated: "I almost got raped." We agree that a prosecutor cannot place unfounded prejudicial statements into the trial proceedings, but we find that the statements regarding rape by the prosecutor in this case were not unfounded. *People v Williams,*

114 Mich App 186; 318 NW2d 671 (1982), lv den 422 Mich 909 (1985).

Defendant also claims that the trial court erred in finding that the complainant, an eleven-year-old girl, was competent to testify and also argues that counsel should have been given an opportunity to examine the witness concerning her competence to testify. MCL 600.2163; MSA 27A.2163 requires the court to determine the competency of a child under ten years of age and thus would not be applicable to this case. Further, MRE 601 contains a presumption of competency for every witness unless the court finds the person to be incompetent. *People v Draper,* 150 Mich App 481, 488; 389 NW2d 89 (1986), lv pending. The burden of determining competency is placed squarely on the trial court and questions by counsel are not proper. MRE 601.

Defendant also objects that the trial court allowed a police officer to testify from his police report, over defense objection, without a proper showing that he needed his memory refreshed or lacked knowledge of the case. We find that the trial court erred, but the error was harmless. *People v Paintman,* 139 Mich App 161, 174; 361 NW2d 755 (1985), lv den 422 Mich 931 (1985).

Defendant further argues that the discussion concerning deletion of a statement concerning the term "rape" in the line-up sheet introduced as Exhibit 3 was prejudicial in that it was discussed in front of the jury. However, defendant has failed to offer any support for the conclusion that such discussion results in error requiring reversal. Case law would indicate that, as long as the statement objected to was not read in front of the jury, it is not prejudicial to argue as to its inadmissibility. *Schweim v Johnson,* 10 Mich App 81; 158 NW2d 822 (1968); *People v Keith,* 119 Mich App 699; 326

NW2d 612 (1982), lv den 417 Mich 1018 (1983). In this case there was no reading of the actual statement in the argument concerning deletion, and the court advised the jury that there were deletions in some documents because those things deleted were not material to the case. No error occurred.

Defendant argues that the judge's interruptions in defense counsel's cross-examination prejudiced the jury against the defendant and caused the defense counsel to abandon an important line of questioning. MRE 611(a) provides the court with broad power to control the interrogation of witnesses in a case. The Supreme Court in *People v Fleish,* 321 Mich 443, 464; 32 NW2d 700 (1948), stated:

> So far as the cross-examination of a witness relates either to facts at issue or relevant facts, it is a matter of right; but when its object is to ascertain the accuracy or credibility of a witness, its method and duration are subject to the discretion of the trial judge and, unless abused, its exercise is not the subject of review.

In *People v Taylor,* 386 Mich 204, 208; 191 NW2d 310 (1971), the Supreme Court indicated that a trial court is allowed a great deal of discretion in connection with limitations placed on cross-examination and refused to allow review unless the record shows a clear abuse of such discretion. In the instant case, the trial judge did not deny defense counsel the right to continue questioning, but only requested that he state his questions in a different manner so that the witness would understand the questions. The record and case law would support the fact that this did not prejudice defendant. We find no error.

III

Defendant on appeal also argues that the line-up in this case was impermissibly suggestive because it contained no other men from the neighborhood and the police told the complainant that the suspect was in the line-up. Defendant would further argue that the withholding of evidence with regard to the identification procedure denied defendant due process of law.

Trial counsel raised no objection to the identification during trial and made no motion to suppress the identification testimony. In *People v Lee,* 391 Mich 618, 626; 218 NW2d 655 (1974), and *People v Coles,* 417 Mich 523, 552; 339 NW2d 440 (1983), the Supreme Court has indicated that it will not examine a question regarding suggestiveness of identification procedures when there is no motion to suppress at trial. Our review of the line-up procedure would indicate that it was not impermissibly suggestive. Further, appointed counsel was present at the time the line-up was held. Our review of the line-up identification record shows that, even if no neighbors were present, the men in the line-up closely approximated the description of defendant. We cannot find that the fact that the complainant was told her attacker would be in the line-up is prejudicial. *People v Barnes,* 107 Mich App 386, 390; 310 NW2d 5 (1981), lv den 413 Mich 867 (1982).

Even if the line-up were shown to be suggestive, the facts of this case show that under the *Kachar* guidelines, there is an independent basis for the in-court identification. *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977). The complainant testified that she knew the man from the neighborhood and had even seen him the day before near her stepfather's car. When the incident happened,

complainant was able to see defendant's face because it was light out. The incident occurred at approximately 6:30 A.M. in late June and the identification took place that same afternoon shortly after 2:00 P.M. In addition, the description given by complainant did not vary from the time she first told her mother and the time of trial.

Defendant's argument that he may have been denied effective assistance of counsel at the line-up cannot be reviewed here because no motion was made to suppress the identification or for an evidentiary hearing at trial. Defendant's complaint that no other men from the neighborhood were in the line-up was information that could have been readily obtainable from the defendant. We find no error.

IV

Finally, defendant complains about a sentence of from ten to fifteen years where the sentencing guidelines recommended a minimum of forty-two to sixty months. The trial judge adequately stated the reasons for imposing a harsher sentence, noting that defendant had just got out of prison, was on parole, and defendant was in a house exploiting a small child. The trial judge also noted that defendant had a prior criminal record. Defense counsel objects that those items are already dealt with in the sentencing guidelines.

In *People v Kenneth Johnson,* 144 Mich App 125, 137; 373 NW2d 263 (1985), lv den 424 Mich 854 (1985), this Court noted:

It is not an abuse of discretion for the trial court to rely on some of the same factors already considered in the sentencing guidelines as a basis for

departing from the recommended minimum sentence range. The sentencing judge may justifiably conclude that the guidelines give inadequate weight to certain factors or that the facts of the case warrant a more severe sentence.

The trial judge in sentencing noted that this was defendant's fourth felony conviction and the trial judge was not even mentioning defendant's one misdemeanor conviction. In addition, the trial judge felt that the exploitation of an eleven-year-old child was inexcusable. We are not shocked by the sentence given and see no need to determine whether the sentencing guidelines scores were accurately computed.

Affirmed.