PEOPLE v. PECK.

1. CRIMINAL LAW — SECOND JEOPARDY — NEW TRIAL AFTER RE-
VERSAL.

The rule that a conviction of one of the offenses charged in an
information operates as an acquittal of the others, so as to
bar a trial for them after reversal, should be confined in its
operation to cases where the principal offense charged in-
cludes within it lower grades of crime, and should not be ex·
tended to cases in which the same offense is charged in differ-
ent ways in several counts. HOOKER and MONTGOMERY, JJ.,
dissenting.

2. INDICTMENT AND INFORMATION—SEVERAL COUNTS—ELECTION.

Where respondent's counsel raise no question of the right of
the people to try respondent upon both counts of the infor-
mation until after the proofs are closed, the court is not lim-
ited to the face of the information in determining whether
the two counts charge the same offense, but may interpret
the information in the light of the evidence before the court
when the question is presented.

3. SAME—IDENTITY OF OFFENSES.

Respondent obtained money from the prosecuting witness to
be used in buying State tax lands and sent it to the auditor
general, who, being unable to comply with the application,
returned the money to respondent in the form of a draft of
the State treasurer payable to respondent's order    Respond-
ent cashed the draft and converted the money to his own use.
*Held*, that counts charging (1) that respondent embezzled
the money, and (2) that he embezzled the draft thereby com-
mitting larceny, both based upon section 11570, 3 Comp.
Laws, charged the same offense.

4. CRIMINAL LAW—APPEAL — QUESTIONS REVIEWABLE — SCOPE OF
OBJECTION BELOW.

Where the objection below to allowing the stenographer to read
the testimony of a deceased witness went to the competency
of the testimony itself regardless of authentication, the objec-
tion that the prosecution failed to make preliminary proof of
the accuracy of the stenographer's minutes, first raised in this
court, will not be considered.

5. SAME—EVIDENCE—HARMLESS ERROR.

 Where respondent's counsel made his opening statement to the
    jury before the people's evidence was offered, and admitted
    receipt by respondent of the money claimed to have been
    embezzled, and stated that the only issue on trial was the
    fact of a certain settlement, error in admitting documentary
    evidence tending to show receipt of the money otherwise
    abundantly proved is not prejudicial.

6. SAME—EVIDENCE—ADMISSIONS OF COMPLAINING WITNESSES.

 On the trial of an information for larceny by embezzlement,
    evidence that the complaining witness, deceased at the time
    of the trial, had made statements tending to show that the
    transaction in issue had been settled, is inadmissible, the
    complaining witness not being a party to the suit, and the
    testimony being admissible only as impeaching and his atten-
    tion not having been called to the statements.

7 SAME—TRIAL—ARGUMENT OF COUNSEL.

 Convictions in criminal cases will not be reversed because of
    the impassioned arguments of the prosecuting officers unless
    the court can clearly see that such arguments were unwar-
    ranted by the evidence and probably contributed to the result.

8. SAME.

 Where the verdict of guilty is the only one that could have
    been honestly rendered upon the record, and there was
    ground for arguing that the respondent had committed for-
    gery and subornation of perjury to defend himself against the
    charge upon which he was being tried, such argument is no
    ground for reversal.

Exceptions before judgment from Muskegon; Russell,
J. Submitted May 3, 1906. (Docket No. 150.) Decided
February 5, 1907.

William Peck was convicted of larceny. Affirmed.

*Turner & Turner*, for appellant.

*George S. Lovelace*, Prosecuting Attorney, and
*Charles B. Cross*, Assistant Prosecuting Attorney, for
the people.

HOOKER, J. The defendant, who had received a
check for $250 from the complainant, to be used for

purposes agreed upon, was charged with diverting it to his own purposes. The transaction occurred several years ago, but his misuse of the check having been recently discovered, he was prosecuted upon an information containing five counts.

The first was a charge of the larceny of a check for the sum and value of $250 on November 12, 1897. The second charged the larceny of $250 in money on December 17, 1898. The third charged statutory larceny under 3 Comp. Laws, § 11570, by conversion of the check for $250, the same having been delivered to him on November 12, 1897. The fourth charged the embezzlement of $250 in money under the same statute on December 17, 1898. The fifth charged the embezzlement of the check under the same statute on December 17, 1897.

Upon a trial the first three counts were nolle prossed, and the defendant was convicted under the fourth count. A new trial being ordered by this court [139 Mich. 680], both fourth and fifth counts were submitted to the jury, and defendant was convicted under the fifth count.

It was contended that the conviction upon the fourth count was an acquittal of the offense charged in the fifth count, and that the court should not have submitted the case to the jury upon the fifth count at the later trial. Counsel for the people contend that as this information did not charge separate offenses, but merely one charge, which it stated differently in separate counts to meet the proof, whatever it might be, they all charged substantially the same thing, and a conviction upon one count was not an acquittal upon the other. In *Lesslie* v. *State*, 18 Ohio St. 390, they find authority for this statement. The great weight of authority sustains the proposition that a conviction upon one count is an acquittal upon others, and the case of *Dealy* v. *U. S.*, 152 U. S. 539, is directly in point upon the question raised here. See, also, *Selvester* v. *U. S.*, 170 U. S. 266, 267, *In re Franklin*, 77 Mich. 615; Tiffany on Criminal Law (5th Ed.), p. 478 et

seq. Many other cases are cited. Cooley on Constitutional Limitations (7th Ed.), p. 470.

We have no alternative but to reverse the judgment, and, as the defendant has been acquitted of one count upon the first trial, and the other upon the second, the defendant should be discharged.

MONTGOMERY, J., concurred with HOOKER, J.

BLAIR, J. The weight of authority, perhaps, supports Justice HOOKER'S opinion in this case, if our determination of the offense charged is limited to the face of the information. It is worthy of consideration, however, that, since the decision in *Dealy* v. *U. S.,* 152 U. S. 539, the Federal Supreme Court has held, in *Trono* v. *U. S.,* 199 U. S. 521, that, upon a new trial granted on defendant's appeal, he must take the burden with the benefit, and go back for the new trial upon the whole case. While our decisions are not in harmony with that in the *Trono Case,* I think they should be confined in their operation to similar cases where the principal offense includes within it lower grades of crime, and should not be extended to cases like the present. The statute under which respondent was charged and convicted reads as follows:

"If any person to whom any money, goods, or other property which may be the subject of larceny, shall have been delivered, shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money, or other property, or any part thereof, he shall be deemed by so doing to have committed the crime of larceny." 3 Comp. Laws, § 11570.

The fourth and fifth counts of the information are as follows:

"And also that heretofore, to wit, on the 17th day of December, A. D. 1898, the said William Peck to whom then and there had been delivered the sum of two hundred and fifty dollars of the goods and chattels and property of the said Nathan H. Webb, the same being goods and chattels and property which may be the subject of larceny,

and having then and there been delivered to the said William Peck as the goods, chattels, and property of said Nathan H. Webb, said William Peck did embezzle and fraudulently convert to his own use, thereby committing the crime of larceny, and did then and there in the manner aforesaid feloniously steal, take and carry away the said two hundred and fifty dollars, of the value of two hundred and fifty dollars of the goods and chattels of the said Nathan H. Webb, contrary to the form of section 11570 of the Compiled Laws of the State of Michigan, in such case made and provided, and against the peace and dignity of the people of the State of Michigan.

"And also that heretofore, to wit, on the 17th day of December, A. D. 1897, at the county aforesaid, the said William Peck to whom had then and there been delivered a certain check drawn by the treasurer of the State of Michigan, payable to the order of the said William Peck, for the sum of, to wit, two hundred sixty-seven dollars, of the value of, to wit, two hundred sixty-seven dollars, said check being the goods, chattels, and property of the said Nathan H. Webb, and the said check being goods, chattels, and property which may be the subject of larceny, and having then and there been delivered to the said William Peck as the goods, chattels, and property of the said Nathan H. Webb, the said William Peck did embezzle and fraudulently convert to his own use, thereby committing the crime of larceny, and did then and there in the manner aforesaid, feloniously steal, take, and carry away the said check for two hundred sixty-seven dollars, of the value of two hundred sixty-seven dollars, of the goods, chattels, and property of the said Nathan H. Webb, contrary to the form of section 11570 of the Compiled Laws of the State of Michigan in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

Respondent's counsel raised no question of the right of the people to try the respondent upon both counts, until the proofs were closed. Under such circumstances, whatever may be the rule where the question is raised seasonably, the court is not limited to the face of the information in determining whether the two counts charge the same offense, but may interpret the information in the light of the evidence before the court when the question

is presented. *People* v. *McKinney*, 10 Mich. 54; *Van Sickle* v. *People*, 29 Mich. 61. The circuit judge, therefore, did not err in holding that the two counts charged the same transaction in different forms, if the testimony warranted such a conclusion, as I think it did.

The respondent obtained from Webb money to be devoted to the purchase of State tax lands, and for this money he was accountable to Webb. Respondent sent this money to the auditor general in pursuance of his duty. The auditor general, being unable to comply with respondent's application, returned the money in the form of a draft of the State treasurer for $267, payable to the order of respondent. Respondent converted the treasurer's draft into money, as he had a right to do, and he then had what he originally had, the money of Mr. Webb, for which he was accountable to Mr. Webb. Respondent converted this money to his own use, and he thereupon became guilty of larceny under the statute quoted.

As the circumstances appear in the record, the only way the conversion of the draft was shown was by showing that respondent converted it into money and then stole the money. Precisely the same testimony was necessary to convict under either count, and the elimination of either count would have made no change in the proofs. The only difference between the two counts as applied to the evidence is that one count charges that he formed the felonious intent to convert Webb's money to his own use before he cashed the draft, while the other charges that he formed the felonious intent to convert Webb's money after he cashed the draft. The essence of both counts is that he stole Webb's money. Both juries found, in substance, that respondent stole Webb's money; they only differed as to when he formed the felonious intent. Not only was there but a single transaction between the parties involved; there was a single state of facts throughout. What difference does it make whether respondent converted the State treasurer's draft or the money pro-

cured by his indorsement of the draft and its presentation at a bank, or whether he embezzled all of the money on Monday or a part of it on Monday and the remainder on Tuesday? The inquiry, so far as criminal purpose and the accomplishment of such purpose is concerned is, Did respondent or did he not convert to his own use the money which Webb put in his charge? If he did convert that money to his own use, all of the elements of a single offense are present, whether he conceived the criminal purpose while he held the draft, while he was counting the money obtained by it, or after he left the bank.

This case is not similar to cases where the respondent is charged with a principal offense and convicted of a lesser offense included in it, or where he is charged with distinct offenses in separate counts. As said by the supreme court of Ohio in *Lesslie* v. *State*, 18 Ohio St. 395:

"Where the indictment, though consisting of several counts, is founded upon a single transaction, the verdict is a unit, and lays the foundation for but a single judgment. A verdict of 'guilty' upon one of the counts and of 'not guilty' upon the others is followed by the same legal consequences as a verdict of guilty upon all the counts, and when, in either case, the verdict is set aside and a new trial granted on the defendant's motion, the case is opened for retrial upon the counts upon which he was acquitted, as well as those upon which he was convicted. If this were not so, the value and object of the rule allowing a single offense to be charged in different ways in several counts would be greatly impaired, and often defeated.

"But where the several counts of an indictment are for separate and distinct offenses, the verdict is necessarily several in its nature, and the finding as to each offense constitutes the basis of a separate judgment. It is the same in effect as if rendered on separate indictments.

"In such case the granting of a new trial, on conviction of one offense, has no connection with the verdict of acquittal of others, and the latter may well be allowed to stand and have effect, though the former should be set aside.

"The position taken by counsel for the plaintiff in error is supported by authorities cited in their brief. But it

seems to us that in these cases a correct principle was misapplied.

"We think the principle contended for properly applies where there is a conviction and an acquittal on different counts for separate and distinct offenses, or where part of the defendants are acquitted and part convicted of the same offense, but that where all of the counts are for the same offense, and are varied merely to meet the proof, it has no just application.

"Judgment affirmed."

I think it is open to us under our decisions to follow the rule established by the Ohio court. That rule is consistent with reason and justice, and I am in favor of its adoption by this court.

Respondent's counsel also contend that:

(1) The court erred in permitting the testimony of the deceased complaining witness, Webb, taken on the first trial to be read by the stenographer without proof of the accuracy of his transcript.

(2) The court erred in receiving in evidence certain checkbook stubs, letters, etc.

(3) The court erred in refusing to permit testimony of a conversation of a witness with Webb, by which it was offered to show that Webb acknowledged receipt of his money.

(4) The court erred in permitting improper and prejudicial argument by the prosecuting attorney.

1. The stenographer who took down the testimony of Webb on the previous trial was called as a witness to read such testimony, whereupon the counsel for respondent made the following objections:

"*Mr. Turner:* I desire at this time to object. I would like to place my objection upon the record. In the first place we have a constitutional provision, being section 28 of article 6 of the Constitution of this State, reading as follows: [Reads.]

"Now, the court has held that the word 'confronted' upon the trial before a jury means face to face.

"*The Court:* If you have got any authorities on that point, aside from the article, I would be very glad to see them.

" *Mr. Turner:* I want to state further: Of course it will be claimed by the prosecution that, in the case of the death of a witness that that forms an exception to this constitutional provision, because I suppose he will claim that the party has been confronted, and had an opportunity to cross-examine the party in this case. As the court will, I think, take judicial notice of the fact that this case has been before the Supreme Court of this State, and the opinion handed down in the case, whereby the Supreme Court of this State found that there was error in certain testimony given by Mr. Webb on the trial of this case; that is, the witness they seek now to introduce the testimony of. Now, what I claim is this: That, where testimony is allowed to be read, are in those cases where the testimony is competent and never in a case where the testimony is incompetent.

"Now, this being the exception to the constitutional provision, it would be incompetent, under the decisions of the Supreme Court, to present that fabric of the testimony just as it was given by the witness on the former trial; part of it being incompetent would exclude the rest, for the reason that the testimony must be put in the case of the decease of a witness just as the witness had given it, the entire part of it.

" If the testimony could be admitted as an entirety and placed before the jury, just as Judge CAMPBELL intimates in [*People* v. *Sligh*], 48 Michigan [58], it should be, that would be one question, then that testimony would be admissible, but where a part of it has been held incompetent, we claim they cannot cull out portions and introduce that, while a portion of it might be competent, if that constituted it all. Where a part is incompetent, it renders the whole incompetent in this class of cases; that is our proposition. And I make the further objection that there is nothing to warrant this testimony under any rule of law.

" *The Court:* I will overrule that objection.

" *Mr. Turner:* Give me an exception.

" *Mr. Lovelace:* Of course, it is not the desire of the prosecution to introduce into this case any testimony that has been held incompetent, and when we reach that stage of the case, why I suppose the objection of counsel will be sustained.

" *Mr. Turner:* There we come right up against the proposition again; there is just the point exactly; some of

this objection was made by way of a motion to strike out testimony after it was in.    That testimony goes before this jury that the Supreme Court held incompetent.

"*Mr. Lovelace:* I don't know any reason why they cannot object in the first instance.

"*The Court:* We will try and not get in any testimony that is improper if we can avoid it.

"*Mr. Turner:* An exception.

"*Mr. Lovelace:* I would suggest that the questions might be repeated by the stenographer and that will give them an opportunity to make any objections in the first instance they desire.

"*Mr. Turner:* I object to this as incompetent, irrelevant, and immaterial.

"*The Court:* Well, go on.

"*Mr. Turner:* Take an exception.    We do not care to consent to anything.

" *The Court:* Let us have the testimony; we will not take the testimony that was held to be incompetent if you will just keep track of that.    Let us move along, gentlemen, the question is about this testimony.

"*Mr. Turner:* Read it slow.

"*The Witness:* I am going to read it from a copy I made of it, if there isn't any objection to that.    Testimony referred to read as follows."

As appears from the objections above set forth, no specific · objection was made upon the ground that the stenographer's minutes had not been properly authenticated, and the court was justified in supposing that the objections were limited to those specifically pointed out. The objections specified went to the competency of the testimony itself regardless of authentication, and the objection that the prosecution failed to make preliminary proof of the accuracy of the stenographer's minutes is raised for the first time in this court.    Under such circumstances, we must decline to consider the objection as a ground for reversal.

2. Counsel for respondent made his opening statement to the jury immediately after the prosecuting attorney's opening and before any testimony had been introduced. In the course of his statement he said to the jury:

"Now, the result was Mr. Peck sent this money, as the evidence will show you, to the auditor general's office, for the purchase of this property known as the 'Sadler Block;' that, because it had been redeemed, he received the money back, and on this 19th day of May in the store of the Montague Hardware Company there, they figured up—the individual account that he has owing Mr. Peck amounts, I think, to $125—and Mr. Peck goes to his safe and gets the balance of $250, which they figure up is the amount of the settlement, and pays Mr. Webb that amount, and takes his receipt in full satisfaction of the debt, waiving the provisions of the contract made on the Ferry property that would have entitled him by its terms as we will show you, gentlemen of the jury, when that is introduced in evidence, to one-half of that money, but he takes and figures out the individual account existing between him and Mr. Webb, which amounts to $125, and pays him the other $125."

It is apparent from this statement, as well as from previous testimony of respondent, read in evidence, that the only substantial issue between the parties was whether respondent had repaid the money which he admitted he had received. Aside from the admissions of respondent and his counsel, there was an abundance of competent proof of his receiving the money, and if errror was committed in any of the rulings complained of, which we do not decide, it was not prejudicial to respondent.

3. Respondent made the following offer of proof, which was rejected by the court:

"*Mr. Turner:* I offer to show by this witness that in May of 1900 he worked about 3 hours for Mr. Webb, and was then told by him that he couldn't get any money because he didn't have any at that time for his work, and that he quit. In the early part of June of the same year, June of 1900, Mr. Webb informed this witness that he had settled up the matter of this Sadler block deal and had received the money from Mr. Peck that he had furnished to purchase the tax title on this Sadler block, and I offer to show further that this was not communicated to Mr. Peck until the last few days and not until after the death of Nathan H. Webb.

"*Mr. Lovelace:* I object to the admission of any such testimony.

"*The Court:* I don't believe that is proper; I don't think it would be if Mr. Webb was alive and I doubt if it is proper now.

"*Mr. Turner:* I understand what the rule is generally, I think, as well as anybody; the rule is that, if Mr. Webb was living, this should be called to his attention and he be interrogated about it before this testimony could be put in; that is correct, there isn't any question about that, but that is beyond the range of possibilities now, and to close the door on a man for proof on account of an unforeseen occurrence of which he had no knowledge would certainly, it seems to me on the face of it, be the height of injustice.   *   *   *   We were treating this matter this morning when your honor made the ruling that you did, as if this was rebuttal testimony—that is, if it was testimony competent on the impeaching line—and the attention of Mr. Webb should be called to it, should have been called to it before it would be admissible.   I think admissions made by the party such as we claim in this case in the statement that I have made on the record are admissible as affirmative proof even though the party be dead."

This offer was properly refused.  Webb was not a party to the criminal case, and therefore his admissions or contradictory statements could not be introduced as affirmative or original evidence.  It was essential to the admissibility of the testimony that Webb's attention should have first been called to it.  *Belt* v. *State*, 103 Ga. 12; *Mattox* v. *U. S.*, 156 U. S. 237.

4. We are not disposed to reverse convictions in criminal cases because of the impassioned arguments of the prosecuting officers unless we can clearly see that such arguments were unwarranted by the evidence and probably contributed to the result.  The verdict of the jury is the only one they could have honestly rendered upon this record.  There was ground for arguing that the respondent had committed forgery and subornation of perjury to defend himself against the charge upon which he was being tried, and the prosecuting attorney, believing such

charges to be true, was justified in using strong language. We do not find anything in the arguments complained of which, in our opinion, would justify the reversal of a verdict manifestly correct. *People* v. *Tubbs*, ante, 1.

We have discussed such of the 110 assignments of error as in our opinion merited special consideration. We find no reversible error in the record, the conviction is affirmed, and the record remanded to the circuit court for Muskegon county for further proceedings.

McALVAY, C. J., and CARPENTER, OSTRANDER, and MOORE, JJ., concurred with BLAIR, J.