SAUVE *v.* CARLING BREWING COMPANY, INC.

1. TRIAL—FAIR TRIAL—INVESTIGATION OF JURY—PREJUDICE—IM-
PROPER STATEMENTS IN FINAL ARGUMENT.
    Fair trial of personal injury case *held,* to have been denied both parties, where on voir dire reference was made to an investigation of a jury in another case where a large verdict had been rendered for plaintiff, prejudice was injected into the case by improper reading of pleadings and depositions, and final arguments for both parties contained statements from which inferences of improper conduct of the opposing parties or their counsel were suggested.

2. APPEAL AND ERROR—NEW TRIAL—PREJUDICE.
    An immediate retrial of personal injury action is ordered, where reversal is made on account of prejudicial misconduct of both trial counsel before the jury resulting in denial of a fair trial.

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 35, 463, 487, 495.
[2] 39 Am Jur, New Trial §§ 56, 57.
[3] 14 Am Jur, Costs §§ 10, 21, 99.

3. Costs—Mistrial—New Trial.

    Defendant appellant is denied costs of trial court and upon review of personal injury case, and plaintiff *held*, entitled to costs on account of mistrial only if he recovers judgment upon new trial.

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted June 4, 1964. (Calendar No. 23, Docket No. 50,010.) Decided February 2, 1965.

Declaration by Edward H. Sauve against Carling Brewing Company, Inc., a Virginia corporation, and Ernest Mell. Verdict and judgment for plaintiff against defendant corporation. Corporate defendant appeals. Reversed and remanded.

*van Benschoten & van Benschoten* (*Duane S. van Benschoten*, of counsel), for plaintiff.

*Stanton, Taylor, McGraw & Collison* (*John W. McGraw*, of counsel), for defendant.

Per Curiam. This case was tried in the Saginaw circuit during May, 1962, at a time when the jury panel was under investigation by an insurance company because of a large plaintiff's verdict in another case. A private detective hired by the insurance company and the company's local manager had been cited to show cause why they should not be held in contempt for jury tampering. All of this was given publicity in the Saginaw News, a newspaper of daily circulation allegedly read by 75% of the jury panel.

On the morning of trial, defendant moved for a continuance which was denied after jurors were examined on voir dire as to the subject of the jury investigation. The trial judge propounded several questions submitted by defendant. Four jurors ad-

mitted having read the news account of the jury
investigation. None had been questioned by the
jury investigators. None felt that their verdict could
be influenced by the knowledge that an investigation
had occurred. It is possible that without more, the
matter could have been tried with essential fairness
to the parties but such repeated prejudice was in-
jected into the trial thereafter that a new trial must
be ordered.

The trial began with a highly argumentative open-
ing statement by plaintiff's attorney in which it was
charged that defendant had raised inconsistent de-
fenses, a position which plaintiff's attorney sought
to substantiate by reading from pleadings and depo-
sitions. While in and of itself not necessarily re-
versible, this performance merely set the stage, in
the instant case, for the bitter histrionics which fol-
lowed. In the course of trial there were veiled ref-
erences to insurance investigators. Plaintiff's final
argument was replete with references to the large,
foreign corporate defendant pitted against plaintiff,
a poor working man, and his family. It was sug-
gested that the corporate defendant had spent large
sums of money investigating the case but, despite
the expensive investigation, the defendant was with-
holding evidence. Then plaintiff's attorney, warm-
ing to the occasion even more, made this accusation:

"That isn't a locally operated thing, somebody out
there being responsible. This is a far-flung, wide
strung out outfit and you can infer what you want
as to who is pulling the strings and pushing the but-
tons *around here* but *I'll tell you, it isn't all here
in court.*" (Emphasis supplied.)

Further on in the argument, plaintiff's counsel
made the following statements, in obvious reference
to the jury investigation to which reference has al-
ready been made:

"Yes, you have got a right to know who the plaintiff and the defendant is.

"I wished I knew who they all were, but I'll tell you this, I will make this statement to you: no matter where they're looking, *if there's ten of them, there's twenty eyes right on you right now, to see how this little game is coming out.*

"*They're going to watch you and watch you and watch you, and when you come out with your verdict—*

"*Mr. Stanton:* Now, just a minute, if the Court please. I am going to object to this statement.

"As a matter of fact, I am going to be asked [*sic*] that this jury be discharged at this time—

"*Mr. van Benschoten:* Your Honor, I am in the middle of my argument.

"*Mr. Stanton:* I know, but your argument is very improper." (Emphasis supplied.)

Omitting some others, we come to plaintiff's attorney's final swipe. Again in obvious reference to the jury investigation the following argument was given:

"*There may be some way that you people in deliberating on this case might be afraid to do what is right to be done,* and I'll say this again, if anybody comes around to check you as to why you decide a lawsuit in this circuit court, you tell his Honor, the judge, right up there, because that's against the law. They got no right to do it and they are criminals when they do it, and we just had a hearing right in this courtroom the other day about that."

Defendant's trial counsel was not reluctant to exploit the advantage which reference to the jury investigation gave him. He, too, reminded the jury of the suspicions which attended a jury from the same panel which brought in a substantial verdict. In addition, his rebuttal to the argument of the corporate defendant's bigness plainly stated that

plaintiff's attorney represented a bar association which preyed upon large corporations. In this atmosphere, a fair trial was impossible. The sum total of conduct was to deny both parties of a trial of the issues unmarred by an atmosphere of suspicion and prejudice. As we said in *Benmark* v. *Steffen,* 374 Mich 155, a case tried in the Saginaw circuit at approximately the same time and which recently received the same fate as this case in this Court:

"Sadly though, those issues were prejudicially tried when both counsel, each bitterly accusing the other of repeated aggression as justification of his own aggression, succeeded together in depriving the two litigants of their constitutional right to a fair and impartial jury verdict. * * *

"Granting that the first of the two aggressors got the worse of it, the result nevertheless was that neither the plaintiff nor the defendant received or could have received that to which both were entitled upon the oath of a duly chosen jury, a fair and unprejudiced verdict rendered upon evidence devoted to the triable issues only."

As in *Benmark,* we reverse on account of prejudicial misconduct of both trial counsel before the jury. Instructions for immediate retrial are also the same. No costs incurred by appellant below or upon review here, may be taxed. Plaintiff may recover his costs on account of such mistrial only in event he recovers judgment upon new trial. Other motions are denied.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.