PEOPLE *v.* MASON.

SAME *v.* HARRISON.

1. CRIMINAL LAW—CLOSING ARGUMENT—CHARACTERIZATION OF DE-
FENDANT—LOAN SHARK.
    Prosecutor's characterization of defendant charged with burn-
    ing a dwelling house and preparing to burn a dwelling house
    as a "loan shark" was a fair inference from established and
    uncontroverted facts about his loaning operations, in which
    he collected $1 of interest on each dollar of loan, and not
    grounds for reversal of his conviction (CL 1948, §§ 750.72,
    750.77).

2. SAME—TRIAL—COMMENTS ON EVIDENCE.
    Argument of the prosecution commenting on evidence produced
    at a criminal trial is not grounds for reversal of a conviction
    unless the statement objected to is completely unwarranted by
    the evidence.

3. SAME—BURNING OF DWELLING HOUSE—EVIDENCE.
    Evidence adduced in prosecution for burning and preparation
    to burn a dwelling house *held,* sufficient to support verdict
    (CL 1948, §§ 750.72, 750.77).

4. NEW TRIAL—RECANTATION OF WITNESS—VAGUE AFFIDAVIT.
    Courts very carefully scrutinize recanting affidavits of witnesses
    at a criminal prosecution, and an affidavit which merely says
    that the recanting witness gave testimony which was not true
    and that he makes the affidavit in order that justice may be
    done is too vague and lacking in specificity to justify a new
    trial in prosecution for burning a dwelling house and preparing
    to burn a dwelling house (CL 1948, §§ 750.72, 750.77).

REFERENCES FOR POINTS IN HEADNOTES
[1]  53 Am Jur, Trial § 504.
[2]  51 Am Jur, Trial § 463 *et seq.*
[3]  5 Am Jur 2d, Arson § 46 *et seq.*
[4–6]  39 Am Jur, New Trial § 169.

5. Same—Discretion of Court.

Granting of a new trial on the basis of a recanting affidavit of a witness in a criminal prosecution lies within the sound discretion of the trial court.

6. Same—Discretion of Court—Delayed Motion.

Decision of the Court of Appeals that a recanting affidavit of a witness at a trial for burning a dwelling house and preparing to burn a dwelling house was too vague to justify a new trial does not preclude exercise of the discretion of the trial court to grant a delayed motion for a new trial if the defendants should present an affidavit specifying the extent and materiality of the perjured testimony sufficiently to persuade the trial court that the interest of justice requires a new trial (CL 1948, §§ 750.72, 750.77).

Appeal from Recorder's Court of Detroit; O'Hara (John P.), J. Submitted Division 1 December 5, 1967, at Detroit. (Docket No. 1,731.) Decided March 28, 1968.

Robert Mason and Thomas Harrison were convicted of burning a dwelling and preparing to burn a dwelling. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Edward L. Douglas,* for defendants.

Lesinski, C. J. The defendants, Robert Mason and Thomas Harrison, appeal their conviction by a jury of burning a dwelling house[1] and preparing to burn a dwelling house.[2] They charge that the prosecutor committed reversible error when in his

---

[1] CL 1948, § 750.72 (Stat Ann 1962 Rev § 28.267).
[2] CL 1948, § 750.77 (Stat Ann 1962 Rev § 28.272).

closing argument he referred to the defendant Mason as a "loan shark," and they allege that the verdict is against the great weight of the evidence. Further, they ask for a new trial on the basis of an affidavit by Helena Fambro, a prosecution witness, that she made untrue statements at the trial.

On Valentine's day, February 14, 1964, a fire, begun in the attic, severely damaged the dwelling house at 2244 West Boston boulevard in the city of Detroit. On a complaint by Nicholas Baublin of the arson squad of the Detroit fire department, issued after an investigation by the squad, the defendants were charged with preparing and setting the fire. According to testimony produced at trial, Robert Mason and Thomas Harrison, together with Doris Thomas, who resided at 2244 West Boston, agreed that they would set fire to the house. Doris Thomas testified that the defendant Thomas Harrison, a contractor, "told me that I had $17,000 insurance * * * and we could get a large amount if we set it afire."

Doris Thomas notified the insurer, by means of a mimeographed form provided and filled in by the defendant Mason, that Mason should be made a joint payee of the insurance proceeds. The insurer's check for $17,000, the maximum amount payable under the policy, was introduced as an exhibit at trial. It had been indorsed by Mason and deposited in his bank account. The defendant Harrison's contracting concern did the work to repair the damage done by the fire.

Mason paid $4,500 of the $17,000 proceeds to Doris Thomas. It was established that the reason Mason paid only that amount was that the balance was deducted as interest and principal on a loan owing by Doris Thomas to Mason. According to uncontroverted testimony, Mason had loaned money to Doris

Thomas at "dollar for dollar" interest; that is, for. each dollar Mason loaned Doris Thomas, she would promise to pay Mason two dollars.

It was to such transactions that the prosecutor referred when he said in his closing argument that the defendant Mason extracted from Doris Thomas a rate of interest "that would make a waterfront loan shark ashamed." The evidence of Robert Mason's transactions with Doris Thomas and of his financial involvement in this affair was admissible to show his motivation in perpetrating the crime that yielded the $17,000 of insurance proceeds Mason deposited in his bank account. Since the defendant Mason exercised his constitutional right not to take the stand, the prosecution could not introduce evidence for the purpose of attacking the defendant's character. But the prosecutor's characterization of Mason as a "loan shark" was a fair inference from the facts established and uncontroverted relating to his loaning operations, and argument of the prosecution commenting on evidence produced at trial is not grounds for reversal of a conviction unless the statement objected to is completely unwarranted by the evidence. *People* v. *Peck* (1907), 147 Mich 84, 95; *People* v. *DeBeaulieu* (1944), 308 Mich 173, 175. The label "loan shark" was hardly more prejudicial to the defendant Mason in the hearing of the jury than the bare and uncontroverted fact that he had charged one dollar of interest for one dollar loaned.

The defendants' allegation that the verdict is against the great weight of the evidence is without merit. The discrepancies in the record were resolved by the jury, whose job it was to see and hear the witnesses and weigh the credibility of what they said. The trial judge's instruction adequately described to the jury their job in weighing testimony, resolving inconsistencies, and making determina-

tions of fact. A review of the record demonstrates to us that the evidence clearly supports their verdict.

Helena Fambro testified for the prosecution. She stated that the defendants asked her to serve as a decoy while the defendants, together with Doris Thomas, set the fire at 2244 West Boston on Valentine's night, 1964. Subsequent to trial, Miss Fambro swore to an affidavit stating that "she did give testimony against the defendants, Robert Mason and Thomas Harrison, which was not true; and that she makes this affidavit in order that justice may be done on behalf of the defendants."

On the basis of this affidavit, the defendants move for a new trial. But courts very carefully scrutinize recanting affidavits. *People* v. *Andrews* (1960), 360 Mich 572. The affidavit these defendants present, entirely vague and lacking in specificity, cannot justify a new trial. A string of such recanting affidavits could obtain for a defendant a string of trials, and the prosecutorial process, made virtually endless, could effectively be defeated.

The general rule is that the granting of a new trial on the basis of a recanting affidavit lies within the sound discretion of the trial court. *People* v. *Lowenstein* (1944), 309 Mich 94. Our decision here would not preclude the exercise of this discretion by the trial court on a delayed motion for new trial, in the event the defendants should present a sworn affidavit specifying the extent and materiality of the perjured testimony sufficiently to persuade the trial court that the interest of justice requires a new trial.

Affirmed.

Fitzgerald and McGregor, JJ., concurred.