PEOPLE *v.* HUMPHREYS

1. CRIMINAL LAW—ARGUMENT OF COUNSEL—DEFENDANT'S GUILT—PROSECUTOR'S BELIEF.

A prosecutor is free in final argument to relate the facts to his theory of the case and in so doing to say that certain evidence leads him to believe that the defendant is guilty as charged; however, he may not express his personal belief in the defendant's guilt without relating that belief to the evidence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 53 Am Jur, Trial § 486.
[2, 3, 5] 53 Am Jur, Trial § 505.
[4] 39 Am Jur, New Trial §§ 54, 115.

2. CRIMINAL LAW—ARGUMENT OF COUNSEL—IMPROPER ARGUMENT—
REMEDIES—CAUTIONARY INSTRUCTION—APPEAL AND ERROR.

    The failure of defense counsel to object to a prosecutor's improper line of argument is a bar to appellate review only
where the goal of that objection—a cautionary instruction to
the jury—in all likelihood would have eliminated the prejudice
arising from the prosecutor's remark; however, where the prejudice created by a prosecutor's improper line of argument
cannot be eliminated despite any cautionary instruction that
could have been given, and thus, an objection would have been
pointless, a failure to object will not preclude appellate review.

3. CRIMINAL LAW—ARGUMENT OF COUNSEL—DEFENDANT'S GUILT—
PROSECUTOR'S BELIEF—PREJUDICE—NEW TRIAL.

    The prosecutor's remark in his final argument to the jury that
if, in his opinion and in the opinion of the police, defendant
were innocent of the second-degree murder of his wife "we
would not be here right now" was highly prejudicial and improper because it may well have led the jury to suspend its
own powers of critical analysis and judgment in deference to
the experience and prestige of the prosecutor and of the police
and because it is uncertain whether a curative instruction to
the jury would have countered the impact and eliminated the
prejudice of that remark, even if defense counsel had objected
to it, defendant was entitled to a new trial.

4. CRIMINAL LAW—PREJUDICIAL ARGUMENT—STRATEGY—NEW TRIAL.

    A defendant in a criminal prosecution cannot be held accountable for an injury that is neither of his own making nor subject to repair without a new trial; therefore, trial court erred
in taking judicial notice of defense counsel's high reputation
and attributing his failure either to request a cautionary instruction to the jury or to move for a new trial on the basis
of the prosecutor's prejudicial argument as a strategem for
gaining a new trial if the jury returned an unfavorable
verdict.

5. CRIMINAL LAW—ARGUMENT OF COUNSEL—INSTRUCTIONS TO JURY—
CURATIVE EFFECT—PREJUDICIAL ARGUMENT.

    A general jury instruction that the jurors were to determine
the facts from the evidence consisting of testimony and exhibits
and that arguments, statements, and remarks of counsel were
not evidence to be considered by them did not cure the prejudice inhering in the prosecutor's final argument that if the
defendant were innocent of the second-degree murder of his
wife "we would not be here right now" because if even a

specific instruction, given soon after the remark had been made, would not have eliminated the inhering prejudice, a general instruction given somewhat more remotely in time could not have eliminated that prejudice.

Appeal from Oakland, Farrell E. Roberts, J. Submitted Division 2 November 5, 1969, at Lansing. (Docket No. 6,197.) Decided June 22, 1970. Leave to appeal denied August 27, 1970. 383 Mich 824.

Robert Thomas Humphreys was convicted of second-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Assistant Prosecuting Attorney, for the people.

*Smith, Magnusson & Anderson (Douglas A. Chartrand,* of counsel), for defendant on appeal.

Before: J. H. GILLIS, P. J., and McGREGOR and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. On August 6, 1968, Robert Humphreys was tried and convicted by a jury of second-degree murder[1] for shooting and killing his wife. On appeal he complains of numerous remarks made by the prosecutor during final argument but principally of a remark wherein the prosecutor expressed a belief in his guilt. No objection was directed at this remark. The people, while neither denying nor conceding prejudice, contend that the failure to object precludes review by this Court and cite many cases supporting their contention, among

---

[1] MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).

them *People v. Hancock* (1950), 326 Mich 471; *People v. Millman* (1943), 306 Mich 182; and *People v. Panknin* (1966), 4 Mich App 19. Before reciting the remark and relating the setting in which it was made, we will examine the limits of the proposition that the failure to object bars review of a remark expressing the prosecutor's belief in the accused's guilt.

Although the prosecutor is free in final argument to relate the facts to his theory of the case, and in so doing say that certain evidence leads him to believe the defendant is guilty, *People v. Hess* (1891), 85 Mich 128; *People v. Boos* (1909), 155 Mich 407; *People v. McElheny* (1922), 221 Mich 50, he may not express a belief in the defendant's guilt without relating the belief to the evidence. *People v. Quick* (1885), 58 Mich 321; *People v. Dane* (1886), 59 Mich 550; *People v. Hill* (1932), 258 Mich 79. Yet while the impropriety of expressing a personal belief in the defendant's guilt is generally recognized, it has been said that the prejudicial impact of such remarks can be countered by an instruction from the bench, and therefore there is no need for a new trial (unless it be deterrence) if the court instructs the jury to disregard the remark. *People v. Pope* (1896), 108 Mich 361; *People v. MacGregor* (1914), 178 Mich 436; *People v. Panknin, supra.* In *People v. Quick* and *People v. Dane,* cited above, an objection was made, but the trial court failed to give the requested instruction and hence by implication approved the remarks, thereby aggravating the prejudice. In both cases, the Supreme Court reversed the convictions, saying that the instructions should have been given. A conviction will not be reversed, however, if by failing to object, the defendant has allowed the impact of the prosecutor's remarks to go uncountered by an instruction. *People v. David*

*Smith* (1969), 16 Mich App 198.  The defendant will
not be heard to complain of an error that could have
been cured upon timely objection.

The presupposition of these cases is that the im-
pact can be countered and the prejudice eliminated.
Sometimes, however, the prejudice created by an
improper line of argument cannot be eliminated, no
matter the amount of cautionary instruction, *People*
v. *Treat* (1889), 77 Mich 348; *People* v. *Frontera*
(1915), 186 Mich 343, 346; *People* v. *Slater,* 21 Mich
App 561, and therefore an objection would be point-
less.  In *People* v. *Ignofo* (1946), 315 Mich 626, the
principal case cited by defendant Humphreys, the
Supreme Court considered the following remark,
one made without objection, along with another
ground of error and ordered a new trial:

" 'Joe Neuff [the defendant] killed that man.  He
has been slick enough and smooth enough to get
away with it a number of years.  Oh, yes, but there
is the record and it has caught up with him.' "

Justice REID and Justice SHARPE, the author of the
opinion, thought the "statement could not be eradi-
cated from the minds of the jury" and therefore
constituted reversible error despite the absence of
contemporaneous objection.  Two justices concurred
in result without opinion.  The remaining three
justices, also concurring in result, were unwilling to
hold that the "statement could not be eradicated
from the minds of the jury," but acknowledged that
in some cases an instruction cannot eliminate the
prejudice:

"[A] ruling as to whether there was reversible
error must depend upon all the attending circum-
stances of the particular case.  Under some circum-
stances the prejudicial effect may be eliminated by
proper procedure.  See *People* v. *Rosa* (1924), 268

Mich 462; *People* v. *Cleveland* (1940), 295 Mich 139;
*People* v. *Zesk* (1944), 309 Mich 129. On the other
hand, there may be attendant circumstances dis-
closed by the record in a given case which would
necessitate reversal. *People* v. *Bigge* (1939), 288
Mich 417."

From a review of these cases, it is apparent that
the failure to object is and should be a bar to review
only where the goal of objection—a cautionary in-
struction—in all likelihood would have eliminated
the prejudice arising from the prosecutor's remark.
Considerations of judicial economy do not outweigh
the accused's right to a fair trial. With this stand-
ard in mind, we proceed to review the remark made
in the instant case and the setting in which it was
made.

Most of the trial revolved around one hotly con-
tested issue: who pulled the trigger, the defendant
or the victim? The shooting took place on December
29, 1967. Several days before, on December 18,
the defendant's niece, a Mrs. Hall, had arrived from
Texas. She stayed at the defendant's house trailer
in Pontiac as a guest of the defendant and his wife
until the 28th, when the defendant drove her to
Utica to stay overnight with an aunt. After work
on the 29th, the defendant returned to Utica and
picked up his niece to bring her back to Pontiac for
an overnight stay before her scheduled departure
for Texas on the 30th. They stopped on the way
for a few drinks, and, upon their arrival home, de-
fendant's wife was irate. According to the defend-
ant, she started an altercation with Mrs. Hall that
was ended only by his physical intervention, and
then followed the defendant into the bathroom where
a second altercation ensued, both she and the de-
fendant falling into the bathtub and knocking the
shower door off its track. The defendant returned

to the living room and while sitting with his niece heard an indistinguishable noise from the direction of the bedroom, where his wife had gone. This noise was followed by a pistol shot, his wife's announcement, "You want to play, we'll play", and the firing of another shot, this time into the floor of the hallway. The defendant jumped up to disarm his wife, and during the struggle two more shots were fired. He succeeded in disarming her, took the gun to the bedroom, unloaded it and returned it to its holster in a dresser. While in the bedroom, he noticed his wife lying in the doorway with blood on her dress. He told his niece to call the police, which she did.

At the trial, Mrs. Hall corroborated this, the defendant's account of the shooting, while the defense advanced two theories as to how the victim came to be wounded: Either she accidentally shot herself while still in the bedroom (and hence, the indistinguishable noise) or she shot herself when the defendant sought to wrest the pistol from her control. In either event, of course, the defendant did not pull the trigger. The prosecution rejected both theories and offered the testimony of detective sergeant Christensen of the Michigan state police crime detection laboratory that the wound was caused by a bullet entering the buttocks and coming out at the breast. From the nature of the wound, sergeant Christensen theorized, the shooting could not have been accidental. Yet, though it was sergeant Christensen's expert opinion that the point of entry was the buttocks, the *indicia* of entry at this point were by no means conclusive. Dr. Rothwell, the examining pathologist, thought at the time of the autopsy that the bullet had entered the breast, and at trial confessed, his earlier opinion notwithstanding, that he could not determine the point of entry. He did

aid the prosecution's case, however, by attributing the bruises and abrasions he found on the victim's body to severe "blows", a characterization somewhat inconsistent with the defense's theory that the injuries were sustained when she fell into the bathtub. Also adduced in aid of the prosecution's case was the testimony of an investigating officer that the defendant, shortly after the officer's arrival at the scene, replied "I did" when asked, "Who shot her?" The defendant countered this testimony by asserting that he had instead said, "I *guess* I did," and explaining that this reply referred to the possibility that his wife was shot during the second altercation.

After the close of proofs and the defense's summation of its case, the prosecutor rose to make his final argument, opening with the remark with which we are concerned:

"I can assure you this: That if the defendant in the opinion of the police and in my opinion were innocent of this charge, we would not be here right now."

The prosecutor then undertook a rebuttal of the defense summation, reviewing the testimony and reiterating the prosecution's theory that the shooting was not accidental. As we already know, the jury returned a verdict of guilty of second-degree murder.

Faced as it was by a very close question of fact, the jury may well have been led by this remark, even though it is a truism in all but a very few cases, to suspend its own powers of critical analysis and judgment in deference to those of the police and the prosecutor. And if the remark had this effect, it also had the effect of derogating the defendant's right to a trial by jury, since this right contemplates a jury that ultimately exercises its own judgment

in resolving disputed questions of fact. The prejudicial nature of this remark and others like it was defined by the Supreme Court in *People* v. *Boske* (1922), 221 Mich 129, 134, where the trial court ruled as proper the prosecutor's remark that the sheriff "knew that he had the guilty man":

"This gave room for the jury to understand they might consider in their deliberations the fact that the sheriff knew he had the guilty man or at least give consideration to the sheriff's opinion that he had. It was the duty of the jury to pass upon the facts and decide the question of guilt or innocence uninfluenced by the opinions of others. *The import of such argument was an appeal for conviction on the opinion of the sheriff.*" (Emphasis added.)

Because this remark may well have led the jury to suspend its own powers of judgment in reviewing the evidence before it, we hold the remark to be highly prejudicial and improper. That it had this effect seems likely in view of the experience and prestige standing behind the prosecutor's office, the police department, and, ultimately, the person who made it.

"It is presumable that statements of fact based upon personal knowledge, made by a person occupying the responsible position of prosecuting attorney of a county, whom the people have chosen because of his ability and character to fill that position, would have both weight and influence with the jury, and may have determined any doubt which they, or some of them, may have entertained of the defendant's guilt against him." *People* v. *Dane, supra,* at 553.

And because of this experience and prestige, we cannot say with any certainty that an instruction would have countered the impact and eliminated the prejudice of this remark. It seems likely that the

jury, after being instructed to disregard the remark and weigh only the evidence before it, would say "yes, of course, * * * but the police and prosecution *do* believe Humphreys did it, and   * * * * ". In light of the closeness of the ultimate factual question in this case and our inability to say that an instruction would have eliminated the prejudice inhering in this unfortunate remark, we hold it to be reversible error, and order a new trial.

In passing, we make note of two arguments raised by the people in opposition to granting a new trial by reason of the remark. Neither, in our opinion, is of merit. In the first argument, the people ask this Court to take notice of the high reputation enjoyed by the defendant's trial counsel and to regard counsel's failure to either request an instruction or move for a new trial[2] as a stratagem for gaining another trial should the jury return an unfavorable verdict. The answer to this argument, we think, is that counsel may well have had that in mind, but his acquiescence and the motivation behind it are irrelevant. The prejudice or injury to his client had already been irreparably initiated and consummated, not at his hands, but at the hands of the prosecutor. The defendant cannot be held accountable for an injury that is neither of his own making nor subject to repair short of a new trial. At the same time, the prosecutor has at his disposal a perfect means for avoiding a second trial, and that is to refrain from making the prejudicial remark. In the second argument, the people direct our attention to certain instructions given to the jury shortly before it began its deliberation, and assert that they eliminated any prejudice:

---

[2] The failure to move for a mistrial does not prevent us from reversing the conviction. *People* v. *Brocato* (1969), 17 Mich App 277, footnote 12, p 292.

"It is your duty to determine the facts, and to determine them from the evidence produced in open court.

*     *     *

"The evidence which you are to consider consists of the testimony of witnesses and the exhibits offered and received.

*     *     *

"Arguments, statements and remarks of counsel are intended to help you in understanding the evidence and applying the law, but are not evidence."

As we said above, it does not seem likely that the prejudice would have been eliminated by a specific instruction made soon after the remark was made. It follows with greater reason that a general instruction, made somewhat more remotely in time, would not eliminate the prejudice.

The defendant raises a second issue, one that we cannot resolve on this appeal. He contends that the investigating officers found and took the pistol by an illegal search and seizure, and that it was therefore inadmissible at the trial. Although the defendant neither moved for an evidentiary hearing to determine the legality of the search, nor objected to the pistol's admission into evidence, and therefore cannot complain of error on this appeal, *People* v. *Ferguson* (1965), 376 Mich 90; *People* v. *Wilson* (1967), 8 Mich App 651, there exists the possibility that the issue will be raised on retrial. See *People* v. *Smith* (1969), 19 Mich App 359, 365, footnote 3; *People* v. *Kelley* (1970), 21 Mich App 612, 632. We recognize this possibility, but choose not to resolve the issue. The issue is best resolved after the circumstances surrounding the seizure of the pistol are fully known, that is, after an evidentiary hearing

with the claim of illegal search and seizure placed squarely before the court.

Reversed and remanded for a new trial.

All concurred.