PEOPLE *v.* WHEELER

OPINION OF THE COURT

1. CRIMINAL LAW—PROSECUTOR'S REMARKS—IMPROPER REMARKS— APPEAL AND ERROR—FAILURE TO OBJECT.

Improper remarks made by the prosecutor do not require reversal where defense counsel failed to object and where the evidence against the defendant was so overwhelming that the jury could not arrive at any conclusion other than that the defendant was guilty.

DISSENT BY LEVIN, J.

2. CRIMINAL LAW—JURY—DUTY.

*Jurors do not have a duty to support their local police, their duty is to decide fairly between the people and the defendant.*

3. CRIMINAL LAW — EVIDENCE — POLICE OFFICER'S TESTIMONY — WEIGHT.

*A conviction based on the testimony of the arresting police officers, such testimony being directly contradicted by the testimony of the accused, is not based on such overwhelming proof of guilt that the jury could not have found the defendant innocent; while jurors may decide that the police officers are more credible than a defendant, there is no rule of law dictating such a decision.*

4. CRIMINAL LAW—WITNESSES—POLICEMEN—WEIGHT.

*There is no rule of law that a policeman's testimony must be given preference over that of an accused.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 458 *et seq.*
[2, 8, 10] 53 Am Jur, Trial § 35.
[3, 4] 58 Am Jur, Witnesses § 860 *et seq.*
[5] 53 Am Jur, Trial § 505.
[6, 7] 53 Am Jur, Trial § 465.
[9] 53 Am Jur, Trial § 507.

5. CRIMINAL LAW—PROSECUTOR'S REMARKS—PREJUDICIAL REMARKS—APPEAL AND ERROR—FAILURE TO OBJECT.

*An assignment of error based on the prosecutor's improper argument will be considered for the first time on appeal if the appellate court concludes that the impropriety could not have been cured by a cautionary instruction even if timely objection had been made.*

6. CRIMINAL LAW—PROSECUTOR'S REMARKS—PREJUDICIAL REMARKS.

*Prosecutor's exhorting the jury to show support for the police by returning a verdict of guilty, and, implicitly threatening that without such support the police might not long continue to provide protection constituted reversible error, because the prejudicial effect of the prosecutor's remarks could not have been eliminated by a cautionary instruction, even if one had been requested.*

7. CRIMINAL LAW—PROSECUTOR'S REMARKS—PREJUDICIAL REMARKS.

*A prosecutor's saying, in closing argument, "I think it is high time that we look at the situation when they start saying the police, the police, oh my God, they are so, and yet we want them, and yet we need them, how much can they take? How much can they take, sometimes we wonder why they remain in their employment trying to do their job under circumstances like this and they have to sit here and listen to this sort of thing. The verdict, ladies and gentlemen, should be guilty as charged." constitutes reversible error.*

8. CRIMINAL LAW—TRIAL—JUDGE'S RESPONSIBILITY.

*The ultimate responsibility for assuring the defendant a fair trial rests with the trial judge.*

9. CRIMINAL LAW—PROSECUTOR'S REMARKS—PREJUDICIAL REMARKS—JUDGE'S RESPONSIBILITY.

*Where the prosecutor engages in improper and prejudicial remarks, the trial judge should intervene, even though the defendant's trial lawyer sits idly in his chair; this is especially true where the court is aware that the defendant's lawyer is court-appointed.*

10. CRIMINAL LAW—PROSECUTOR'S DUTY—FAIR TRIAL.

*Both the prosecutor and the court have a duty to see that a defendant receives a fair trial.*

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J.  Submitted Division 1 March 8, 1971,

at Detroit.   (Docket No. 9859.)   Decided May 21, 1971.   Leave to appeal denied, 386 Mich 765.

Lorenzo Wheeler was convicted of breaking and entering with intent to commit larceny.   Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: DANHOF, P. J., and McGREGOR and LEVIN, JJ.

DANHOF, P. J.   Defendant was convicted by jury trial of breaking and entering with intent to commit larceny.   MCLA § 750.110 (Stat Ann 1970 Cum Supp § 28.305).   He now appeals.

The defendant raises numerous allegations of error most of which do not merit discussion.   The one issue of substance involves allegedly improper remarks made by the prosecutor in his closing argument.

While we do not condone the prosecutor's remarks, we do not believe that a reversal is required.   The defendant failed to object to the prosecutor's remarks, and therefore, we will not reverse absent a miscarriage of justice.   *People* v. *David Smith* (1969), 16 Mich App 198.   Recently this Court said in *People* v. *Rowls* (1970), 28 Mich App 190, 195:

"It is well settled in the case of errors which are curable by a cautionary instruction that a conviction will not be reversed where the defendant has allowed the impact of the prosecutor's remarks to go to the jury without objection. *People* v. *Humphreys* (1970), 24 Mich App 411; *People* v. *David Smith* (1969), 16 Mich App 198. Since the error here was not so prejudical that it could not have been cured by an instruction, *People* v. *Cipriano* (1927), 238 Mich 332, this assignment of error is without merit."

The evidence against the defendant was overwhelming and we do not believe the jury could arrive at any conclusion other than that the defendant was guilty. In *People* v. *Peck* (1907), 147 Mich 84, 95, the Supreme Court said:

"We are not disposed to reverse convictions in criminal cases because of the impassioned arguments of the prosecuting officers unless we can clearly see that such arguments were unwarranted by the evidence and probably contributed to the result. The verdict of the jury is the only one they could have honestly rendered upon this record."

Affirmed.

McGREGOR, J., concurred.

LEVIN, J. (*dissenting*). The defendant, Lorenzo Wheeler, was convicted by a jury of breaking and entering a bar with intent to commit larceny. He contends that certain remarks made by the prosecutor in his closing jury argument require a new trial. The majority rule that the failure of defendant's lawyer to object precludes our consideration of the issue.

The case was submitted to the jury on the contra-
dictory testimony outlined in the margin.[1]   In his

---

[1] At the trial, the people's evidence showed that around six
o'clock in the morning of January 5, 1970, two police officers in
a patrol car received a radio call indicating that a breaking and
entering was in progress at a bar on Russell in Detroit.   The
officers, upon arriving at the scene, saw no one near the premises
but found the back door to the bar broken and torn off its hinges.
A car was parked fifteen feet from the door and tire tracks in
fresh snow led to the door.   It appeared that the door might have
been broken by the impact of an automobile.

As the officers were waiting outside the door, listening for move-
ment inside, the inner hallway door within the bar was thrown
open and a man, identified as the defendant, came running out of
the bar.   As defendant cleared the outer doorway, one of the
officers yelled, "police officer, halt!"   The defendant, however, con-
tinued to run and, when he was approximately ten feet away,
one of the officers fired a 12-guage shotgun and the defendant fell.
As the officers approached the defendant, he reached for something
in the belt area of his pants and then slashed at one of the officers
with a steak knife, inflicting no injuries, however.   Defendant
was subdued and handcuffed after a scuffle which resulted in a cut
to defendant's mouth.   Other police officers arrived at the scene
as the defendant, with the steak knife still lying beside him, was
being handcuffed.   Still believing the defendant to have been
wounded by the shotgun blast, the arresting officers took him to
a hospital where an examination revealed no pellet wounds.

Boxes containing liquor bottles and miscellaneous change were
found on the ground at the rear of the bar, and the coin boxes of
the jukebox and pool table inside the bar had been broken open.

The steak knife was offered in evidence, but there was no testi-
mony as to fingerprints or by the doctor who examined the de-
fendant after the arrest.   The only evidence offered regarding the
car showed that the license plate was from West Virginia and
that the car had not been reported stolen.

Defendant's testimony directly contradicted that of the police.
He said that he was standing at a bus stop some 200 to 250
feet from the bar waiting for a bus after having spent the evening
with friends.   The two arresting police officers pulled up in a
squad car and after calling defendant over to the car one of them
asked him where he was going.   He replied that he was going
home.   He was told to get into the back seat of the squad car,
after which the car approached the bar.   As the three neared the
bar, a man ran out.   One of the officers fired at him.   Defendant,
himself, was neither fired at nor hit.

Defendant was asked if he knew the man and had been serving
as lookout for him.   When defendant answered in the negative,
the officer told him that if he did not reveal who the other man
was, he would see to it that defendant was booked and charged
for the crime.   The officer further threatened to beat defendant
if he did not cooperate, and a beating was, in fact, administered,
resulting in a cut lip, bruised legs, a knocked-out tooth, and
various lumps and scratches on the head.   It was for these injuries

closing argument the prosecutor exhorted the jury
to show support for the police by returning a ver-
dict of guilty and, in effect, confronted them with
the implicit threat that without such support the
police might not long continue to provide needed
protection:

"I have to do my responsibility to the best of my
ability. I think in this instant to counter act that,
I think it is high-time that we look at the situation
when they start saying the police, the police, oh my
God, they are so, and yet we want them, and yet we
need them, how much can they take? How much
can they take, sometimes we wonder why they re-
main in their employment trying to do their job
under circumstances like this and they have to sit
here and listen to this sort of thing. The verdict,
ladies and gentlemen, should be guilty as charged.
It gives me no pleasure to point a finger at any man,
but in this case, I submit, the defendant brings
upon himself a verdict of guilty as charged, that is
of breaking and entering in there, he is the only one
there with the intent to commit larceny, and your
verdict in substance would be on this record, Mr.
Wheeler, there is no reasonable alternative we have,
whether we like to or not, but to find you guilty as
charged. Thank you very much."

We are not faced with inadvertence, but with a
conscious attempt to sway the jurors by playing
upon their fears. Jurors do not have a duty to

---

and not for any possible gunshot wounds that defendant was sub-
sequently taken to the hospital. At the hospital, X-rays were taken.

Defendant admitted that he had been to the bar several times
before, and that, while he had never had possession of the steak
knife offered in evidence, he had last seen this kind of knife at
the bar several months before the arrest.

Defendant said that he did not own a car and did not recognize
the man who ran from the bar. It was revealed that his criminal
record included convictions for joyriding and carrying a concealed
weapon.

support their local police; their duty is to decide fairly between the people and the defendant.[2]

"The duty of the prosecutor is to seek justice, not merely to convict." American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, Standard 1.1(c).

"The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury." Standard 5.8(c).

"The prosecutor should refrain from arguments which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." Standard 5.8(d).

The majority's statement that the evidence of defendant's guilt was overwhelming is true only if we adopt the reasoning implicit in the prosecutor's argument to the effect that in a swearing contest between police officers and an accused person there is a duty to credit the version of the police. While jurors may well tend to decide that policemen are more credible than a defendant with a record of prior convictions, we cannot properly adopt such a preference as a rule of law.

An assignment of error based on improper prosecutorial argument will be considered for the first time on appeal if the appellate court concludes that the impropriety could not have been cured by a

---

[2] See *Brown* v. *United States* (1966), 125 App DC 220 (370 F2d 242). Prosecutor's appeal to jury that acquittal would leave police powerless to act short of resort to martial law held reversible error, citing *Viereck* v. *United States* (1943), 318 US 236 (63 S Ct 561, 87 L Ed 734). See, also, *Adams* v. *State* (Fla, 1966), 192 So 2d 762; *Grant* v. *State* (Fla, 1967), 194 So 2d 612.

cautionary instruction even if timely objection had been made.[3] In stating and applying that general principle the appellate courts have not explained the kind of cautionary instruction required to overcome the impropriety.[4]

In the present case, the mere sustaining of an objection by the defendant's lawyer would not have dispelled the prejudicial effect of the prosecutor's statements to the jury immediately before its deliberation.

While it is the prosecutor's duty to see to it that the defendant receives a fair trial,[5] the ultimate responsibility for assuring the defendant a fair trial rests with the trial judge.[6] Where the prosecutor engages in improper and prejudicial remarks, the judge should intervene even though the defendant's trial lawyer sits idly in his chair.[7] This is especially true where the court is aware that the defendant's lawyer is court-appointed.[8]

---

[3] See *People v. Humphreys* (1970), 24 Mich App 411, 415 and *People v. Montevecchio* (1971), 32 Mich App 163, recognizing the general rule and ordering new trials because, although the issue had not been preserved, we concluded that the prejudice to the defendants done by the improper arguments could not have been overcome by cautionary instructions. Similarly, see the civil cases of *Sauve v. Carling Brewing Company, Inc.* (1965), 374 Mich 487, and *Morrison v. Skeels* (1969), 16 Mich App 727, 736. See, generally, *People v. Shirk* (1970), 383 Mich 180, 194; *People v. Degraffenreid* (1969), 19 Mich App 702, 715.

[4] "When remarks have been made in a trial which should not be made and the court carefully instructs the jury to disregard them, it is a question of judgment whether what was said was sufficiently misleading or prejudicial to call for reversal. It is not the kind of thing where the statement of a general rule or the citation of authorities can give very much aid. We are clear in our own minds that this case is one which falls on the reversal side." *United States v. Georga* (CA3, 1954), 210 F2d 45, 47.

[5] *People v. Evans* (1888), 72 Mich 367, 383; *People v. Carr* (1887), 64 Mich 702; *People v. Dane* (1886), 59 Mich 550.

[6] *People v. Camel* (1968), 11 Mich App 219, 222.

[7] *Viereck v. United States*, fn 2 *supra*, p 248; *State v. Miller* (1967), 271 NC 646 (157 SE2d 335); *People v. Carr* (1887), 64 Mich 702, 708.

[8] *Cf. Logan v. United States* (CA5, 1951), 192 F2d 388; *United States v. Smith* (CA 4, 1965), 353 F2d 166.

I am persuaded that a timely objection by the defendant's trial lawyer in this case would not have elicited from the court the kind of vigorous and unequivocal rebuke which would have been necessary to effect a cure.

"It is important that justice be done but it is also important that justice seem to be done. 'Even those guilty of the most heinous offenses are entitled to a fair trial.' * * * if [a guilty man] is convicted in a way inconsistent with the fairness and integrity of judicial proceedings, then the courts should invoke the plain error rule in order to protect their own public reputation." Wright, Federal Practice and Procedure, § 856, p 374.

Here the impropriety was plain and intentional. We should reverse and remand for a new trial.